2015 VT 80

# State of Vermont v. John Galanes

[124 A.3d 800]

No. 14-351

Present: Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Burgess, J. (Ret.), Specially Assigned

Opinion Filed June 12, 2015

*Tracy Kelly Shriver*, Windham County State's Attorney, *David W. Gartenstein*, Deputy State's Attorney, and *Cristina Mansfield*, Legal Intern, Brattleboro, for Plaintiff-Appellee.

*James A. Valente* and *Thomas W. Costello* of *Costello, Valente & Gentry, P.C.*, Brattleboro, for Defendant-Appellant.

¶ 1. **Dooley, J.** Defendant appeals an order of the Windham Superior Court[1] concluding that he violated a condition of his probation requiring him to notify his probation officer if he is planning to begin a sexual relationship. We reverse.

¶ 2. On October 29, 2009, defendant was convicted of several felony and misdemeanor offenses and placed on probation. In August 2013, after two separate probation violations in 2010 and 2013, defendant was placed on stricter conditions regarding sexual relationships. Included in defendant's list of conditions was Condition 45, which states:

> You must inform your [probation officer] of the name and contact information of any person with whom you are planning to have a date or with whom you are planning to begin a dating, sexual or romantic relationship, prior to the date or beginning of the relationship.[2]

---

[1] The underlying criminal charges initially were filed in Windham County under Docket No. 207-2-09 Wmcr. Subsequently, the court granted a motion for a change of venue, and the matter was transferred to Windsor County under Docket No. 907-7-09 Wrcr, where the plea agreement was entered. In January 2010, the court issued an order returning venue to Windham County. Nonetheless, the probation charges at issue here were filed in relation to the Windsor County docket number, and although the probation-violation hearing took place in the Windham Unit of the Criminal Division, the resulting probation-violation order bears the docket number from Windsor County. Therefore, in the case caption, this opinion describes that this case originates from the Windsor Unit.

[2] Defendant moved to supplement his printed case with a modified probation order dated September 3, 2014, in which the language of Condition 45 had been amended to read:

> You must inform your [probation officer] of the name and contact information of any person with whom you are *intending* to have or are having a date or romantic sexual relationship.

(Emphasis added.) Defendant did not discover this document until February 17, 2015, just prior to the oral argument in this appeal. He contends that this modification signals the trial court's intent on the day of the trial and supports his argument that the term "planning" renders the probation condition defective. The State disputes that this supplemental order reflects what actually occurred in the

¶ 3. In March 2014, defendant was given a polygraph test in connection with the terms of his probation. According to the testimony of the polygraph examiner, when defendant was asked if he had engaged in any sexual contact since his last polygraph test, which was administered in October 2013, he admitted to having sexual contact on three separate occasions with the woman who cleans his home.

¶ 4. In April 2014, defendant met with his probation officer to discuss his relationship with his housekeeper. He admitted to her that "he had engaged in a sexual relationship with the woman in the six months between the October 1, 2013 polygraph and the March 31, 2014 polygraph." In May 2014, the State filed a violation of probation complaint alleging a violation of Condition 45.[3]

¶ 5. On September 3, 2014, the trial court held a merits hearing. At trial, defendant and his housekeeper testified that they have known each other for four years and have been close friends for the past three years. He testified that one incident of sexual intercourse occurred after the more stringent condition went into effect and that any other incident took place before the new condition was imposed. The housekeeper testified to the recent incident and also stated that there had been one other incident but could not recall if it had occurred before or after the new condition took effect. She added that "it could have been a couple of times, but it was a long time ago."

¶ 6. The testimony of defendant and his housekeeper disclosed that, at the time of the recent sexual encounter, the housekeeper did not know that defendant was at home and in the shower. Defendant came out of the shower in a towel while the house-keeper was in the bedroom folding laundry. At that point, the two had sex. The housekeeper testified that there was no planning on the part of either her or defendant. Following the merits hearing, the court found that defendant violated Condition 45, stating:

---

lower court, and we agree with the State that this dispute must be settled by the trial court. See V.R.A.P. 10(f) ("If any difference arises about whether the record truly discloses what occurred in the superior court, the difference must be submitted to and settled by that court and the record conformed accordingly."). In any event, the modified language of the condition in no way impacts our decision and analysis here. We therefore deny defendant's motion to supplement the printed case.

[3] Defendant also was charged with violating Condition 39, but that charge is not part of this appeal.

> It was clearly intended and the Court believes it does communicate that [defendant] was not to have sex with people without notifying his [probation officer] in advance. And he had sex with [his housekeeper]. And although it may not have been planned all of the circumstances surrounding it . . . strengthens the evidence that [this is] the kind of thing that [defendant] should have anticipated happening, in light of the fact that they've had sex before. She was in his house regularly, they had a close and comfortable relationship with one another. It would have been much, much, much smarter for him to notify [his probation officer]. . . . But that didn't happen so the risk was not avoided, and he had sex without permission, again, after condition 45 was imposed. That was a violation.[4]

¶ 7. Although the trial court made no explicit findings on the number of incidents and when they occurred, its decision reflects that it was deciding the case based on the occurrence of only one sexual encounter after the date the probation condition was added. Consistent with the trial court's decision, the State bases its argument on appeal on this single incident and does not rely on multiple encounters. Therefore, we cannot decide this appeal, as the dissent suggests, *post*, ¶ 28, on three sexual encounters in the few months between the October 2013 and March 2014 polygraph tests. Even if we could find in this Court that there were three separate encounters after the new condition was imposed, we have no evidence on the nature of these encounters or their timing and no argument in this appeal with respect to the significance of multiple encounters.

¶ 8. Defendant raises two issues on appeal: (1) that the plain language of Condition 45 does not expressly prohibit unplanned sexual contact; and (2) that the language of Condition 45 does not give defendant adequate notice that unplanned sexual contact is prohibited. Defendant challenges both the terms "sexual relationship" and "planning." With respect to the term "sexual relationship," defendant contends that the term "on its face appears to

---

[4] The State, in its closing argument, took "the evidence in the light most favorable to the defendant" and argued that there was a violation of Condition 45 even if defendant and his housekeeper had sex only once after the more stringent condition was imposed. It appears that the court rendered its decision based on this argument without explicitly finding only one incident.

suggest more than a random, spontaneous sexual encounter." With respect to the planning requirement, defendant argues that "[t]here was no evidence that [he] had ever 'planned' a sexual relationship with [his housekeeper]," as they both testified that "their sexual contact was spontaneous, and there is no suggestion that they discussed the matter beforehand, or even knew the other party was present until the contact occurred."

¶ 9. The State argues that the condition requires that defendant notify and gain approval from his probation officer prior to having any voluntary sexual contact. The State argues that the single act of sexual intercourse between defendant and his housekeeper amounted to a sexual relationship, and that the relationship was planned — however briefly — when defendant voluntarily entered into the sexual activity. The trial court also adopted this position, although the court appears to have equated "anticipation" and "planning." We agree with defendant that the language of Condition 45 did not give him fair notice that his conduct was prohibited.[5]

¶ 10. ▇▇ Our review of the trial court's determination that defendant violated a condition of his probation involves two steps. *State v. Bostwick*, 2014 VT 97, ¶ 11, 197 Vt. 345, 103 A.3d 476. We first "examine the trial court's factual findings" and will "uphold them if supported by credible evidence." *Id.* (quotation omitted). We next examine the trial court's legal conclusions, upholding them if they are "reasonably supported by the findings and [do] not constitute an erroneous interpretation of the law." *Id.* (quotation omitted).

---

[5] The necessity of fair notice in probation violation cases often is phrased as a constitutional requirement, and defendant phrased it in those terms in his brief. In *State v. Austin*, we held that "a probationer is barred from raising a collateral challenge to a probation condition that he was charged with violating, where the challenge could have been raised on direct appeal from the sentencing order." 165 Vt. 389, 401, 685 A.2d 1076, 1084 (1996). We noted, however, that we have allowed constitutional challenges in revocation proceedings "when the alleged constitutional infirmity became apparent only as applied to the facts of the alleged violation." *Id.* at 401 n.3, 685 A.2d at 1084 n.3. The prohibition applies only where the probationer is making a facial challenge to the condition. To the extent defendant here is making a constitutional challenge, it is an as-applied challenge not prohibited by *Austin*. Indeed, if defendant prevails, the result will be that the revocation of his probation will be reversed, but the probation condition will remain and may be applied to different facts in the future.

¶ 11. ■ We frequently have held that a probationer must be "given fair notice as to what acts may constitute a violation of his probation." *State v. Peck*, 149 Vt. 617, 619, 547 A.2d 1329, 1331 (1988); see also *State v. Blaise*, 2012 VT 2, ¶ 15, 191 Vt. 564, 38 A.3d 1167 (mem.). We have enforced this standard multiple times with respect to probation conditions that prohibit "threatening behavior." See *State v. Sanville*, 2011 VT 34, ¶¶ 9-10, 189 Vt. 626, 22 A.3d 450 (mem.) (holding that term "threatening behavior" in probation condition "did not afford defendant a reasonable opportunity to know what actions were prohibited, so that he might act accordingly" and concluding that to read defendant's action of "mouthing off" to his landlord as threatening was "to stretch its meaning impermissibly" (alterations omitted) (quotations omitted)); see also *State v. Johnstone*, 2013 VT 57, ¶¶ 16-17, 194 Vt. 230, 75 A.3d 642 (revisiting ambiguity of term "threatening behavior").

¶ 12. It appears that Condition 45 was drafted specifically for defendant's circumstances. Condition 45 is not required by statute, nor expressly authorized by statute. See 28 V.S.A. § 252(b). Its language has not appeared in earlier decisions of this Court,[6] and there is no drafting history to provide extrinsic evidence of the intent of the drafters.

¶ 13. ■ When interpreting the language of a probation condition, we look first to the plain and ordinary meaning of the terms, *Bostwick*, 2014 VT 97, ¶¶ 20-21, frequently turning to dictionary definitions.[7] See *State v. Danaher*, 174 Vt. 591, 593-94, 819 A.2d 691, 695 (2002) (mem.). We turn first to the term "sexual

---

[6] A variation of this condition that required prior notice to the probation officer before beginning a "dating or romantic relationship" was challenged unsuccessfully in *State v. Maddox*, resulting in a three-justice nonprecedential decision. Nos. 2010-194/5/6, 2011 WL 4979925, at *1 (Vt. Jan. 27, 2011) (unpub. mem.), https://www.vermontjudiciary.org/LC/unpublishedeo.aspx. The language of the condition in that case was similar but did not include the term "sexual relationship."

The term "sexual relationship" appears in a number of our cases, but we have not yet been asked to define the term. See, e.g., *State v. Gonyaw*, 146 Vt. 559, 560, 507 A.2d 944, 946 (1985). The term also appears in the definition of "household members" in the Abuse Prevention Act, but it is not separately defined by the statute, and the statute provides no context for determining its meaning. See 15 V.S.A. § 1101(2).

[7] We emphasize that we are not dealing with the term "sexual relations," which appears to encompass a much broader range of activity. See Black's Law Dictionary 1584 (10th ed. 2014) (defining "sexual relations" as any "physical sexual activity that does not necessarily culminate in intercourse"). We acknowledge that

relationship." Dictionary definitions of the term "relationship" vary but generally support an interpretation that suggests something more significant than a single encounter, such as "an emotional or other connection between people" or "a connection, association, or involvement." Random House Unabridged Dictionary 1626 (2d ed. 1993); see also Black's Law Dictionary, *supra*, at 1479 (defining "relationship" as "[a] situation in which two people spend time together or live together and have romantic or sexual feelings for each other"). Additionally, the State cites a law review article analyzing the use of the term "sexual relationship" in the context of domestic violence laws. B. Trimmer, Comment, *A Sexual Relationship, Did We Have One? A Review of 'Sexual Relationship' Within the Context of Alaska's Domestic Violence Laws,* 24 Alaska L. Rev. 237 (2007). The article concludes that the question of whether "a course of sexual conduct [must] ensue for the sexual relations to graduate to a sexual relationship . . . find[s] no answer in the dictionary." *Id.* at 241.

¶ 14. The Trimmer article also posits a number of questions that must be answered in defining "sexual relationship," including the type and duration of the activity. Important here is whether "a casual sexual encounter, such as a one-night stand, qualif[ies]" or whether "there [must] be consistent and recurring sexual activity over a period of time." *Id.* at 240. The author concludes that "the term sexual relationship has no generally accepted legal or social definition . . . [and] the . . . key interpretive questions . . . have no clear answer." *Id.*

¶ 15. The Trimmer article notes that a few states have defined the term "sexual relationship" in their domestic violence statutes. *Id.* at 256. The statutes from Arizona and Minnesota enumerate factors that courts must consider in determining the existence of a sexual relationship. Arizona's statute incorporates the following four factors for defining a "romantic or sexual relationship": (1) "[t]he type of relationship"; (2) "[t]he length of the relationship"; (3) "[t]he frequency of the interaction between the victim and the defendant"; and (4) "[i]f the relationship has terminated, the length of time since the termination." Ariz. Rev. Stat. Ann. § 13-3601(A)(6). Minnesota's statute provides the same four factors for defining a "significant romantic or sexual relationship." Minn.

if that were the term used in the condition, the State's position would be much stronger.

Stat. Ann. § 518B.01(7). Contrary to the State's assertion that the frequency and type of relationship is not part of the equation, these factors expressly require consideration of both.

¶ 16. We recognize that the term "sexual relationship" has been analyzed by courts in other jurisdictions with mixed results.[8] Compare *State v. Sauls*, 106 P.3d 659, 662 (Or. Ct. App. 2005) (noting that term "sexual relationship" is ambiguous in some contexts, but not where sexual relationship was of two years' duration), and *Welch v. Commonwealth*, 628 S.E.2d 340, 343 (Va. 2006) (observing that "vague terms, such as 'sexual relationship,' invite speculation"), with *Bates v. State*, 258 P.3d 851, 860 (Alaska Ct. App. 2011) (concluding that term "sexual relationship" is "sufficiently definite to survive . . . vagueness challenge"),[9] and *Williams v. State*, 924 N.E.2d 121, 128 (Ind. Ct. App. 2009) (holding that phrase "is or was engaged in a sexual relationship with the other person" is not unconstitutionally vague).[10] Notably, these cases involve only passing observations or are dependent upon their individual facts, none of which are comparable to those before us, and therefore provide little guidance here. Thus, we conclude that the term sexual relationship is vague as applied to the facts before us.

¶ 17. Our analysis is similar with respect to the term "planning." Beginning again with dictionary definitions, the term "planning" is defined variously as "to intend," "to propose," "to prearrange the details of," "to scheme," and "to devise." Webster's New International Dictionary 1879 (2d ed. 1961). These definitions undoubtedly

---

[8] The State has cited other cases that involve somewhat similar language but not involving challenges to the language at issue here. See, e.g., *McVey v. State*, 863 N.E.2d 434, 448-49 (Ind. Ct. App. 2007). We do not find these cases helpful.

[9] The question in *Bates* was whether the term "sexual relationship" was vague for the purposes of applying a rule of evidence. As we do here, the Alaska Supreme Court recognized that the answer depended upon the facts involved. In *Bates*, the defendant was described as the victim's boyfriend with whom she had been dating and having sex for four years. The court observed that "[i]t is true . . . that there will inevitably be borderline or difficult cases — cases where the facts do not clearly disclose whether the attachment or association between the two people is a 'continuing' one . . . . But these difficulties are not present in [this] case." 258 P.3d at 860.

[10] As in *Bates*, the court in *Williams* viewed the issue as depending, in part, upon the nature of the relationship, holding that the term was not unconstitutionally vague with respect to the defendant who had been living with and having sexual intercourse with the victim. *Williams*, 924 N.E.2d at 128.

connote some period of time during which an individual contemplates taking action, contrary to the type of spontaneous decision-making that occurred here. We cannot conclude that the plain meaning of the language supports the State's position.

¶ 18. ■■ As defendant points out, the probation conditions at issue in several out-of-state cases required defendants to notify their probation officers *prior to* any sexual relationship. See, e.g., *McVey*, 863 N.E.2d at 448; *Krebs v. Schwarz*, 568 N.W.2d 26, 27 n.1 (Wis. Ct. App. 1997). According to the State, Condition 45 should be read as broadly. But this interpretation effectively nullifies the word "planning" — a word that is absent in similar conditions discussed in other cases. Defendant can be punished only for violating his condition as written, not for violating a condition "that hindsight shows should have been imposed on him." *State v. Waters*, 2013 VT 109, ¶ 18, 195 Vt. 233, 87 A.3d 512 (quotation omitted).

¶ 19. The trial court acknowledged that defendant did not *plan* the sexual encounter with his housekeeper but that he should have *anticipated* the encounter based upon the close friendship between the two. To anticipate that something may happen is not the same as to plan for it. In fact, the court concluded only that defendant *should have* anticipated the encounter, not that he actually did anticipate it. As such, even if we put aside the question of whether the term is ambiguous, we do not accept the trial court's conclusion as sufficient to support a finding that defendant violated the condition.

¶ 20. The dissent offers essentially the same reasoning, stating that "[g]iven the span of time in which defendant admittedly engaged in sex with a woman he considered a friend and confidant, providing notice to his probation officer of the relationship would not seem to have been a difficult, confusing, or unreasonable requirement." *Post*, ¶ 31. On one point, we find the dissent's analysis inconsistent with the plain language of the condition. The dissent views the case as involving three — or two — encounters, but the condition, which was adopted before only the last encounter, requires notification when the probationer is "planning *to begin* a . . . sexual . . . relationship." (Emphasis added.) Under the dissent's analysis, defendant began the sexual relationship before the first encounter, but no condition required notification at that time and defendant did not "begin" the

relationship after the condition was imposed. Moreover, the dissent's analysis, like the trial court's discussion, implies that defendant should have *anticipated* that he would again have sex with his housekeeper and, in turn, notify his probation officer accordingly. The condition does not require defendant to disclose prior relationships; when the condition was imposed, there was no reason for defendant to notify his probation officer of those encounters. The single encounter at issue here was unplanned and did not amount to a sexual relationship.

¶ 21. ■ As we conclude that the two terms at issue are ambiguous, the combination of the two terms particularly supports our conclusion that defendant did not receive fair notice that his conduct was prohibited under Condition 45. Viewed as a whole, the condition does not appear to apply to a chance sexual encounter. As we discuss above, the term "sexual relationship" seemingly requires an association of greater duration and multiple sexual encounters. This reading of the term is reinforced by the placing of the term "sexual relationship" alongside other relationships — dating or romantic — that typically involve longer associations, as well as by the additional requirement that the activity, when planned, be subject to notice and approval from the probation officer. The concept of planning is inconsistent with the concept of a chance sexual encounter.

¶ 22. ■ The State's argument is at its strongest when it urges that the sentencing court must have intended a broad reading. We are required, however, to enforce a probation condition as it is written and not as we wish it had been written. *Waters*, 2013 VT 109, ¶ 18. In doing so, we acknowledge that hindsight demonstrates that we must be more careful and precise in drafting probation conditions. The State's argument leaves the impression that if Condition 45 means what the State says that it does, the condition could have and should have been drafted more directly and concisely to implement that intent.

¶ 23. The dissent's reasoning that the context of the imposition of Condition 45 requires a broader reading of the condition fails for the same reason. *Post*, ¶¶ 33-35. This context may demonstrate the intent behind the condition, but it does nothing to address our concern that the condition was written ambiguously and imprecisely.

¶ 24. We therefore hold that Condition 45 did not give defendant fair notice that his conduct would violate the condition and be

grounds for revocation of his probation. Accordingly, we must reverse the trial court's decision to revoke defendant's probation for violation of this condition.

*Reversed.*

¶ 25. **Burgess, J. (Ret.), Specially Assigned**, dissenting. It has been well and truly said that the law "sharpens the mind by narrowing it."[11] Nowhere is this more apparent than in legal disputes over language, where even terms like "sexual relations" have been famously parsed to the point of absurdity.[12] Therein lies the conundrum. Fairness requires clarity — especially when a defendant's liberty is at stake — but meaning is inherently subjective. The challenge for lawyers and judges, therefore, is to accommodate the limitations of language with the requirements of a common understanding.

¶ 26. The majority concludes that the law failed, in this case, to meet that challenge. It holds that defendant's probation condition requiring that he inform his probation officer of any person "with whom you are planning to have . . . or . . . planning to begin a dating, sexual or romantic relationship" was impermissibly "vague as applied to the facts before us." *Ante*, ¶ 16. It is fair, therefore — indeed it is essential — that the majority explain how this provision fell short on the facts presented and known to defendant. In this regard, it is the majority's analysis, not the probation condition, that appears to be wanting. I therefore respectfully dissent.

¶ 27. As the majority accurately recounts, the probation condition at issue was imposed by the trial court in late August 2013. Shortly thereafter, in late October 2013, defendant submitted to a routine polygraph examination to determine his compliance with the probation conditions. Five months later, in March 2014, defendant submitted to another polygraph examination. After he failed a pretest question about having "sexual contact" with anyone since the last examination, defendant told the examiner that he had had sex with the person that cleans his house "three

---

[11] This quotation is commonly attributed to Edmund Burke, as paraphrased by Justice Holmes. See O. W. Holmes, Jr., *Address at Brown University Commencement, 1897, in* 3 The Collected Works of Justice Holmes 518 (Sheldon M. Novick, ed., 1995).

[12] See What Clinton Said, Wash. Post, Jan. 26, 1998 (quoting President Clinton's statement: "I did not have sexual relations with that woman.").

times" since the last polygraph examination, that is, during the five months between late October 2013 and late March 2014. Defendant acknowledged that he had a friendship with, and a great respect for, the woman in question, and regularly confided in her. The housekeeper also testified that defendant had been for three years "one of the very best friends that I've ever had," and that they had had sex before the incident that led to the violation.[13] Although the majority notes that her recollection was that the prior sexual contacts were "a long time ago," she acknowledged that it was "within the year."

¶ 28. Thus, by defendant's own admission he had sex three times within a period of five months with a woman he knew well and considered a friend. At the hearing, defendant also acknowledged that he had sex with his housekeeper "other than on that one occasion," although he stated that "I think it was outside the parameters of this condition."

¶ 29. While the majority is correct that the trial court made no explicit finding on the timing of the prior sexual contacts, it is not accurate in describing its holding as "based on the occurrence of only one sexual encounter after the date the probation condition was added." *Ante*, ¶ 7. The court simply observed that "they've had sex before, . . . [s]he was in his house regularly, they had a close and comfortable relationship with one another," and thus conclude that defendant should have known that he was required to inform his probation officer of the relationship.

¶ 30. In defining "sexual relationship" the majority cite with approval dictionary definitions "support[ing] an interpretation that suggests something more significant than a single encounter, such as an emotional or other connection between people or a connection, association, or involvement." *Ante*, ¶ 13 (citations omitted). This would seem to fit the facts here quite closely. The record showed plainly that defendant's relationship with his housekeeper was much more than "a single encounter," and — call me old-fashioned — but both parties described what could reasonably be called an intimate or "emotional connection." Thus, under the majority's own definition it is reasonable to conclude that defendant had a "sexual relationship" with his housekeeper over a period

---

[13] The woman's recollection was of two sexual contacts, while defendant's recollection was three, but it is defendant's understanding of what constitutes a "sexual relationship" that is principally relevant here.

of at least five months, including the time period when the probation condition requiring notice to his probation officer was in place.

¶ 31. The majority also questions whether the "planning" requirement of the probation condition was satisfied, noting that it "connote[s] some period of time during which an individual contemplates taking action, contrary to the type of spontaneous decision-making that occurred here," *ante,* ¶ 17, and further observes that "defendant did not *plan* the sexual encounter with his housekeeper." *Ante,* ¶ 19; see also *ante,* ¶ 21 ("The concept of planning is inconsistent with the concept of a chance sexual encounter."). The argument, however, fundamentally betrays the majority's earlier definition of a "sexual relationship" as consisting of something decidedly more than a one-night stand or chance encounter. Thus, the question here is not whether defendant should have informed his probation officer before engaging in the sexual "encounter" with his housekeeper but instead whether he should have informed his probation officer before engaging in a sexual "relationship" with his housekeeper. Given the span of time in which defendant admittedly engaged in sex with a woman he considered a friend and confidant, providing notice to his probation officer of the relationship would not seem to have been a difficult, confusing, or unreasonable requirement.

¶ 32. The majority's own reasoning, therefore, leads ineluctably to the conclusion that the probation condition afforded defendant reasonable notice of its requirements, which he violated by failing to inform his probation officer of the sexual relationship with his housekeeper.

¶ 33. I would go further, however, and hold that the probation condition applied even to a "single" sexual encounter, regardless of the duration or intimacy of the relationship, and that defendant plainly violated the condition. Context is critical. In 2009, defendant was convicted of aggravated domestic assault, unlawful trespass, engaging in a prohibited act, and violation of an abuse-prevention order. His original probation conditions included sex-offender treatment and noncontact with certain persons. He was found to be in violation of probation twice, once in 2010 as a result of improper contact with his former wife, and again in 2013, for again being in contact with a woman who was on his restricted list, and for failing to participate in sex offender treatment.

¶ 34. The second violation led to the imposition of the stricter condition at issue here. Indeed, at the merits hearing in this matter, defendant was asked: "And the purpose of those stricter conditions were, is it fair to say, based on an unwise inappropriate relationship with a former sexual partner, is that fair to say?" Defendant answered, "Yes." The follow-up question to defendant was: "And was it your understanding that these stricter conditions were a direct result of that inappropriate unwise relationship?" Defendant again responded, "Yes."

¶ 35. The record here shows that the stricter probation condition in question was imposed as a result of defendant's earlier, improper contacts with women, and leaves little doubt that defendant understood that its purpose was precisely to bar any future sexual contacts without prior approval. While the language and phrasing of the condition was not entirely artful, syntactic perfection was not required. The question is simply whether the condition afforded defendant *"fair notice* as to what acts constitute a violation of his probation." *State v. Peck*, 149 Vt. 617, 619, 547 A.2d 1329, 1331 (1988) (emphasis added). There is no practical doubt that defendant appreciated that his failure to notify his probation officer before a planned sexual intimacy would violate Condition 45, and there is no doubt that, at least at the moment of this wholly consensual and anticipated intercourse, his intentional intimacy with the housekeeper was "planned" in the common meaning of that term in service to the obvious protective purpose of the prohibition. Accordingly, defendant was on fair notice, and the judgment should be affirmed on this basis, as well.

¶ 36. I am authorized to state that Chief Justice Reiber joins this dissent.