2015 VT 80












State v. Galanes
(2014-351)

 

2015 VT 80

 

[Filed 12-Jun-2015]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to notify
the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at:
Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any
errors in order that corrections may be made before this opinion goes to press.

 

 


 
 
 2015 VT 80
 
 


 


 
 
 No. 2014-351
 
 


 


 
 
 State of Vermont
 
 
 Supreme Court
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
 On Appeal from
 
 
 
 
      v.
 
 
 Superior Court, Windsor Unit,
 
 
 
 
  
 
 
 Criminal Division
 
 
 
 
  
 
 
  
 
 
 
 
 John Galanes
 
 
 February Term, 2015
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 Katherine
 A. Hayes, J.
 
 
 
 
  
 
 


Tracy Kelly Shriver, Windham County State’s Attorney, David
W. Gartenstein, 

  Deputy State’s Attorney, and Cristina Mansfield,
Legal Intern, Brattleboro, for 

  Plaintiff-Appellee.

 

James A. Valente and Thomas W. Costello of Costello, Valente
& Gentry, P.C., Brattleboro, for

  Defendant-Appellant.

 

 

PRESENT:  Reiber, C.J.,
Dooley, Skoglund and Robinson, JJ.,
and Burgess, J. (Ret.), 

                    
Specially Assigned

 

 

¶ 1.            
DOOLEY, J.   Defendant appeals an order of the Windham
Superior Court[1]
concluding that he violated a condition of his probation requiring him to
notify his probation officer if he is planning to begin a sexual
relationship.  We reverse.

¶ 2.            
On October 29, 2009, defendant was convicted of several felony and
misdemeanor offenses and placed on probation.  In August 2013, after two
separate probation violations in 2010 and 2013, defendant was placed on
stricter conditions regarding sexual relationships.  Included in
defendant’s list of conditions was Condition 45, which states:

  You must inform your [probation
officer] of the name and contact information of any person with whom you are
planning to have a date or with whom you are planning to begin a dating, sexual
or romantic relationship, prior to the date or
beginning of the relationship. [2]

¶ 3.            
In March 2014, defendant was given a polygraph test in connection with
the terms of his probation.  According to the testimony of the polygraph
examiner, when defendant was asked if he had engaged in any sexual contact
since his last polygraph test, which was administered in October 2013, he
admitted to having sexual contact on three separate occasions with the woman
who cleans his home.

¶ 4.            
In April 2014, defendant met with his probation officer to discuss his
relationship with his housekeeper.  He admitted to her that “he had
engaged in a sexual relationship with the woman in the six months between the
October 1, 2013 polygraph and the March 31, 2014 polygraph.”  In May 2014,
the State filed a violation of probation complaint alleging a violation of
Condition 45.[3]

¶ 5.            
On September 3, 2014, the trial court held a merits hearing.  At
trial, defendant and his housekeeper testified that they have known each other
for four years and have been close friends for the past three years.  He
testified that one incident of sexual intercourse occurred after the more
stringent condition went into effect and that any other incident took place
before the new condition was imposed.  The housekeeper testified to the
recent incident and also stated that there had been one other incident but
could not recall if it had occurred before or after the new condition took effect.  She added that “it could have been a
couple of times, but it was a long time ago.”

¶ 6.            
The testimony of defendant and his housekeeper disclosed that, at the
time of the recent sexual encounter, the housekeeper did not know that
defendant was at home and in the shower.  Defendant came out of the shower
in a towel while the housekeeper was in the bedroom folding laundry.  At
that point, the two had sex.  The housekeeper testified that there was no
planning on the part of either her or defendant.  Following the merits
hearing, the court found that defendant violated Condition 45, stating:

  It was clearly intended and the
Court believes it does communicate that [defendant] was not to have sex with
people without notifying his [probation officer] in advance.  And he had
sex with [his housekeeper].  And although it may not have been planned all
of the circumstances surrounding it . . . strengthens
the evidence that [this is] the kind of thing that [defendant] should have
anticipated happening, in light of the fact that they’ve had sex before. 
She was in his house regularly, they had a close and
comfortable relationship with one another.  It would have been much, much,
much smarter for him to notify [his probation
officer]. . . .  But that didn’t happen so the risk
was not avoided, and he had sex without permission, again, after condition 45
was imposed.  That was a violation.[4]

¶ 7.            
Although the trial court made no explicit findings on the number of
incidents and when they occurred, its decision reflects that it was deciding
the case based on the occurrence of only one sexual encounter after the date
the probation condition was added.  Consistent with the trial court’s
decision, the State bases its argument on appeal on this single incident and
does not rely on multiple encounters.  Therefore, we cannot decide this
appeal, as the dissent suggests, post, ¶ 28, on three sexual
encounters in the few months between the October 2013 and March 2014 polygraph
tests.  Even if we could find in this Court that there were three separate
encounters after the new condition was imposed, we have no evidence on the nature
of these encounters or their timing and no argument in this appeal with respect
to the significance of multiple encounters.

¶ 8.            
Defendant raises two issues on appeal: (1) that the plain language of Condition
45 does not expressly prohibit unplanned sexual contact; and (2) that the
language of Condition 45 does not give defendant adequate notice that unplanned
sexual contact is prohibited.  Defendant challenges both the terms “sexual
relationship” and “planning.”  With respect to the term “sexual
relationship,” defendant contends that the term “on its face appears to suggest
more than a random, spontaneous sexual encounter.”  With respect to the
planning requirement, defendant argues that “[t]here was no evidence that [he]
had ever ‘planned’ a sexual relationship with [his housekeeper],” as they both
testified that “their sexual contact was spontaneous, and there is no
suggestion that they discussed the matter beforehand, or even knew the other
party was present until the contact occurred.”

¶ 9.            
The State argues that the condition requires that defendant notify and
gain approval from his probation officer prior to having any voluntary sexual
contact.  The State argues that the single act of sexual intercourse
between defendant and his housekeeper amounted to a sexual relationship, and
that the relationship was planned—however briefly—when defendant voluntarily
entered into the sexual activity.  The trial court also adopted this
position, although the court appears to have equated “anticipation” and
“planning.”  We agree with defendant that the language of Condition 45 did
not give him fair notice that his conduct was prohibited.[5]  

¶ 10.         Our
review of the trial court’s determination that defendant violated a condition
of his probation involves two steps.  State v. Bostwick,
2014 VT 97, ¶ 11, ___ Vt. ___, 103 A.3d 476. 
We first “examine the trial court’s factual findings” and will “uphold them if
supported by credible evidence.”  Id. (quotation omitted).  We
next examine the trial court’s legal conclusions, upholding them if they are
“reasonably supported by the findings and [do] not constitute an erroneous
interpretation of the law.”  Id. (quotation omitted).  

¶ 11.         We
frequently have held that a probationer must be “given fair notice as to what
acts may constitute a violation of his probation.”  State v. Peck,
149 Vt. 617, 619, 547 A.2d 1329, 1331 (1988); see also State v. Blaise,
2012 VT 2, ¶ 15, 191 Vt. 564, 38 A.3d 1167 (mem.).  We have enforced
this standard multiple times with respect to probation conditions that prohibit
“threatening behavior.”  See State v. Sanville, 2011 VT 34, ¶¶ 9-10, 189 Vt. 626, 22
A.3d 450 (mem.) (holding that term “threatening behavior” in probation
condition “did not afford defendant a reasonable opportunity to know what
actions were prohibited, so that he might act accordingly” and concluding that
to read defendant’s action of “mouthing off” to his landlord as threatening was
“to stretch its meaning impermissibly” (alterations omitted) (quotations
omitted)); see also State v. Johnstone, 2013
VT 57, ¶¶ 16-17, 194 Vt. 230, 75 A.3d 642 (revisiting ambiguity of term
“threatening behavior”). 

¶ 12.         It
appears that Condition 45 was drafted specifically for defendant’s
circumstances.  Condition 45 is not required by statute, nor expressly
authorized by statute.  See id. § 252(b).  Its language
has not appeared in earlier decisions of this Court,[6] and there is no drafting history to
provide extrinsic evidence of the intent of the drafters.

¶ 13.         When
interpreting the language of a probation condition, we look first to the plain
and ordinary meaning of the terms, Bostwick, 2014
VT 97, ¶¶ 20-21, frequently turning to dictionary definitions.[7]  See State v.
Danaher, 174 Vt. 591, 593-94, 819 A.2d 691, 695 (2002) (mem.).
 We turn first to the term “sexual relationship.”  Dictionary
definitions of the term “relationship” vary but generally support an
interpretation that suggests something more significant than a single
encounter, such as “an emotional or other connection between people” or “a
connection, association, or involvement.”  Random House Unabridged
Dictionary 1626 (2d ed. 1993); see also Black’s Law Dictionary, supra,
at 1479 (defining “relationship” as “[a] situation in which two people spend
time together or live together and have romantic or sexual feelings for one
another”).  Additionally, the State cites a law review article analyzing
the use of the term “sexual relationship” in the context of domestic violence
laws.  B. Trimmer, Comment, A Sexual Relationship, Did We Have One? A Review of ‘Sexual Relationship’ Within the Context of Alaska’s
Domestic Violence Laws,
24 Alaska L. Rev. 237 (2007).  The article concludes
that the question of whether “a course of sexual conduct [must] ensue for the
sexual relations to graduate to a sexual relationship . . . find[s]
no answer in the dictionary.”  Id. at 241.

¶ 14.         The
Trimmer article also posits a number of questions that must be answered in
defining “sexual relationship,” including the type and duration of the
activity.  Important here is whether “a casual sexual encounter, such as a
one-night stand, qualif[ies]” or whether “there [must] be
consistent and recurring sexual activity over a period of time.”  Id. at 240.  The author concludes that “the term
sexual relationship has no generally accepted legal or social definition . . . [and]
the . . . key interpretive
questions . . . have no clear answer.”  Id.

¶ 15.         The
Trimmer article notes that a few states have defined the term “sexual
relationship” in their domestic violence statutes.  Id.
at 256.  The statutes from Arizona and Minnesota enumerate factors
that courts must consider in determining the existence of a sexual
relationship.  Arizona’s statute incorporates the following four factors
for defining a “romantic or sexual relationship”: (1) “[t]he
type of relationship”; (2) “[t]he length of the relationship”; (3) “[t]he
frequency of the interaction between the defendant and victim”; and (4) “[i]f the relationship has terminated, the length of time
since the termination.”  Ariz. Rev. Stat. Ann. § 13-3601(A)(6).  Minnesota’s statute provides the same four
factors for defining a “significant romantic or sexual relationship.” 
Minn. Stat. Ann. § 518B.01(7).  Contrary to
the State’s assertion that the frequency and type of relationship is not part
of the equation, these factors expressly require consideration of both.

¶ 16.         We
recognize that the term “sexual relationship” has been analyzed by courts in
other jurisdictions with mixed results.[8] 
Compare State v. Sauls, 106
P.3d 659, 662 (Or. Ct. App. 2005) (noting that term “sexual
relationship” is ambiguous in some contexts, but not where sexual relationship
was of two years’ duration), and Welch v. Commonwealth, 628 S.E.2d 340,
343 (Va. 2006) (observing that “vague terms, such as ‘sexual relationship,’
invite speculation”), with Bates v. State, 258 P.3d 851, 860 (Alaska Ct.
App. 2011) (concluding that term “sexual relationship” is “sufficiently
definite to survive . . . vagueness challenge”),[9] and Williams v. State, 924 N.E.2d
121, 128-29 (Ind. Ct. App. 2009) (holding that phrase “is or was engaged in a
sexual relationship with the other person” is not unconstitutionally vague).[10]  Notably, these cases involve only
passing observations or are dependent upon their individual facts, none of
which are comparable to those before us, and therefore provide little guidance
here.  Thus, we conclude that the term sexual relationship is vague as
applied to the facts before us. 

¶ 17.         Our
analysis is similar with respect to the term “planning.”  Beginning again
with dictionary definitions, the term “planning” is defined variously as “to
intend,” “to propose,” “to prearrange the details of,” “to scheme,” and “to
devise.”  Webster’s New International Dictionary 1879
(2d ed. 1961).  These definitions undoubtedly connote some period
of time during which an individual contemplates taking action, contrary to the
type of spontaneous decision-making that occurred here.  We cannot conclude
that the plain meaning of the language supports the State’s position.

¶ 18.         As
defendant points out, the probation conditions at issue in several out-of-state
cases required defendants to notify their probation officers prior to any
sexual relationship.  See, e.g., McVey, 863 N.E.2d at 448; Krebs
v. Schwarz, 568 N.W.2d 26, 27 n.1 (Wis. Ct. App. 1997). 
According to the State, Condition 45 should be read as broadly.  But this interpretation effectively nullifies the word “planning”—a
word that is absent in similar conditions discussed in other cases. 
Defendant can be punished only for violating his condition as written, not for
violating a condition “that hindsight shows should have been imposed on
him.”  State v. Waters, 2013 VT 109, ¶ 18, 195 Vt. 233, 87
A.3d 512 (quotation omitted).

¶ 19.         The
trial court acknowledged that defendant did not plan the sexual
encounter with his housekeeper but that he should have anticipated the
encounter based upon the close friendship between the two.  To anticipate
that something may happen is not the same as to plan for it.  In fact, the
court concluded only that defendant should have anticipated the
encounter, not that he actually did anticipate it.  As such, even if we
put aside the question of whether the term is ambiguous, we do not accept the
trial court’s conclusion as sufficient to support a finding that defendant
violated the condition.

¶ 20.         The
dissent offers essentially the same reasoning, stating that “[g]iven the span of time in which defendant admittedly engaged
in sex with a woman he considered a friend and confidant, providing notice to
his probation officer of the relationship would not seem to have been a
difficult, confusing, or unreasonable requirement.”  Post,
¶ 31.  On one point, we find the dissent’s analysis
inconsistent with the plain language of the condition.  The dissent views
the case as involving three—or two—encounters, but the condition, which was
adopted before only the last encounter, requires notification when the
probationer is “planning to begin
a . . . sexual . . . relationship.” 
(Emphasis added.)  Under the dissent’s analysis, defendant began the
sexual relationship before the first encounter, but no
condition required notification at that time and defendant did not “begin” the
relationship after the condition was imposed.  Moreover, the
dissent’s analysis, like the trial court’s discussion, implies that defendant
should have anticipated that he would again have sex with his
housekeeper and, in turn, notify his probation officer accordingly.  The
condition does not require defendant to disclose prior relationships; when the
condition was imposed, there was no reason for defendant to notify his
probation officer of those encounters.  The single encounter at issue here
was unplanned and did not amount to a sexual relationship.  

¶ 21.         As we
conclude that the two terms at issue are ambiguous, the combination of the two
terms particularly supports our conclusion that defendant did not receive fair
notice that his conduct was prohibited under Condition 45.  Viewed as a
whole, the condition does not appear to apply to a chance sexual
encounter.  As we discuss above, the term “sexual relationship” seemingly
requires an association of greater duration and multiple sexual
encounters.  This reading of the term is reinforced by the placing of the
term “sexual relationship” alongside other relationships—dating or
romantic—that typically involve longer associations, as well as by the
additional requirement that the activity, when planned, be subject to notice
and approval from the probation officer.  The concept of planning is
inconsistent with the concept of a chance sexual encounter.

¶ 22.         The
State’s argument is at its strongest when it urges that the sentencing court
must have intended a broad reading.  We are required, however, to enforce
a probation condition as it is written and not as we wish it had been
written.  Waters, 2013 VT 109, ¶ 18. 
In doing so, we acknowledge that hindsight demonstrates that we must be more
careful and precise in drafting probation conditions.  The State’s
argument leaves the impression that if Condition 45 means what the State says
that it does, the condition could have and should have been drafted more directly
and concisely to implement that intent.

¶ 23.         The
dissent’s reasoning that the context of the imposition of Condition 45 requires
a broader reading of the condition fails for the same reason.  Post,
¶¶ 33-35.  This context may demonstrate the intent behind the
condition, but it does nothing to address our concern that the condition was
written ambiguously and imprecisely.

¶ 24.         We
therefore hold that Condition 45 did not give defendant fair notice that his
conduct would violate the condition and be grounds for revocation of his
probation.  Accordingly, we must reverse the trial court’s decision to
revoke defendant’s probation for violation of this condition.

Reversed.


 
 
  
 
 
  
 
 
 FOR THE COURT:
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate
 Justice
 
 


 

 

¶ 25.         BURGESS,
J. (Ret.), Specially Assigned, dissenting.  It
has been well and truly said that the law “sharpens the mind by narrowing it.”[11]  Nowhere is this more apparent than
in legal disputes over language, where even terms like “sexual relations” have
been famously parsed to the point of absurdity.[12]  Therein lies
the conundrum.  Fairness requires clarity—especially when a defendant’s
liberty is at stake—but meaning is inherently subjective.  The challenge
for lawyers and judges, therefore, is to accommodate the limitations of
language with the requirements of a common understanding.  

¶ 26.         The
majority concludes that the law failed, in this case, to meet that
challenge.  It holds that defendant’s probation condition requiring that
he inform his probation officer of any person “with whom you are planning to have . . . or planning to begin a
dating, sexual or romantic relationship” was impermissibly “vague as applied to
the facts before us.”  Ante, ¶ 16. 
It is fair, therefore—indeed it is essential—that the majority explain how this
provision fell short on the facts presented and known to defendant.  In
this regard, it is the majority’s analysis, not the probation condition, that appears to be wanting.  I therefore
respectfully dissent.

¶ 27.         As
the majority accurately recounts, the probation condition at issue was imposed
by the trial court in late August 2013.  Shortly thereafter, in late
October 2013, defendant submitted to a routine polygraph examination to
determine his compliance with the probation conditions.  Five months
later, in March 2014, defendant submitted to another polygraph examination. 
After he failed a pretest question about having “sexual contact” with anyone
since the last examination, defendant told the examiner that he had had sex
with the person that cleans his house “three times” since the last polygraph
examination, that is, during the five months between late October 2013 and late
March 2014.  Defendant acknowledged that he had a friendship with, and a
great respect for, the woman in question, and regularly confided in her. 
The housekeeper also testified that defendant had been for three years “one of
the very best friends that I’ve ever had,” and that they had had sex before the
incident that led to the violation.[13] 
Although the majority notes that her recollection was that the prior sexual
contacts were “a long time ago,” she acknowledged that it was “within the
year.”    

¶ 28.         Thus,
by defendant’s own admission he had sex three times within a period of five
months with a woman he knew well and considered a friend.  At the hearing,
defendant also acknowledged that he had sex with his housekeeper “other than on
that one occasion,” although he stated that “I think it was outside the
parameters of this condition.”  

¶ 29.         While
the majority is correct that the trial court made no explicit finding on the
timing of the prior sexual contacts, it is not accurate in describing its
holding as “based on the occurrence of only one sexual encounter after the date
the probation condition was added.”  Ante,
¶ 7.  The court simply observed that “they’ve had sex before, . . . [s]he was in his house
regularly, they had a close and comfortable relationship with one another,” and
thus conclude that defendant should have known that he was required to inform
his probation officer of the relationship.    

¶ 30.         In
defining “sexual relationship” the majority cite with approval dictionary
definitions “support[ing] an interpretation that
suggests something more significant than a single encounter, such as an
emotional or other connection between people or a connection, association, or
involvement.”  Ante, ¶ 13 (citations omitted). 
This would seem to fit the facts here quite closely.  The record showed
plainly that defendant’s relationship with his housekeeper was much more than
“a single encounter,” and—call me old-fashioned—but both parties described what
could reasonably be called an intimate or “emotional connection.”  Thus,
under the majority’s own definition it is reasonable to conclude that defendant
had a “sexual relationship” with his housekeeper over a period of at least five
months, including the time period when the probation condition requiring notice
to his probation officer was in place.  

¶ 31.         The
majority also questions whether the “planning” requirement of the probation
condition was satisfied, noting that it “connote[s] some period of time during
which an individual contemplates taking action, contrary to the type of
spontaneous decision-making that occurred here,” ante, ¶ 17, and further
observes that “defendant did not plan the sexual encounter with his
housekeeper.”  Ante, ¶  19; see also ante,
¶ 21 (“The concept of planning is inconsistent with the concept of a
chance sexual encounter.”).  The argument, however, fundamentally betrays
the majority’s earlier definition of a “sexual relationship” as consisting of
something decidedly more than a one-night stand or chance encounter. 
Thus, the question here is not whether defendant should have informed his
probation officer before engaging in the sexual “encounter” with his housekeeper
but instead whether he should have informed his probation officer before
engaging in a sexual “relationship” with his housekeeper.  Given the span
of time in which defendant admittedly engaged in sex with a woman he considered
a friend and confidant, providing notice to his probation officer of the
relationship would not seem to have been a difficult, confusing, or
unreasonable requirement.

¶ 32.         The
majority’s own reasoning, therefore, leads ineluctably to the conclusion that
the probation condition afforded defendant reasonable notice of its
requirements, which he violated by failing to inform his probation officer of
the sexual relationship with his housekeeper.

¶ 33.         I
would go further, however, and hold that the probation condition applied even
to a “single” sexual encounter, regardless of the duration or intimacy of the
relationship, and that defendant plainly violated the condition.  Context
is critical.  In 2009, defendant was convicted of aggravated domestic
assault, unlawful trespass, engaging in a prohibited act, and violation of an
abuse-prevention order.  His original probation conditions included
sex-offender treatment and non-contact with certain persons.  He was found
to be in violation of probation twice, once in 2010 as a result of improper
contact with his former wife, and again in 2013, for again being in contact
with a woman who was on his restricted list, and for failing to participate in
sex offender treatment.    

¶ 34.         The
second violation led to the imposition of the stricter condition at issue
here.  Indeed, at the merits hearing in this matter, defendant was asked:
“And the purpose of those stricter conditions were, is it fair to say, based on
an unwise inappropriate relationship with a former sexual partner, is that fair
to say?”  Defendant answered, “Yes.”  The follow-up question to
defendant was: “And was it your understanding that these stricter conditions
were a direct result of that inappropriate unwise relationship?” 
Defendant again responded, “Yes.”    

¶ 35.         The
record here shows that the stricter probation condition in question was imposed
as a result of defendant’s earlier, improper contacts with women, and leaves
little doubt that defendant understood that its purpose was precisely to bar any
future sexual contacts without prior approval.  While the language and
phrasing of the condition was not entirely artful, syntactic perfection was not
required.  The question is simply whether the condition afforded defendant
“fair notice as to what acts constitute a violation of his
probation.”  State v. Peck, 149 Vt. 617, 619, 547 A.2d 1329, 1331
(1988) (emphasis added).  There is no practical doubt that defendant
appreciated that his failure to notify his probation officer before a planned
sexual intimacy would violate Condition 45, and there is no doubt that, at
least at the moment of this wholly consensual and anticipated intercourse, his
intentional intimacy with the housekeeper was “planned” in the common meaning
of that term in service to the obvious protective purpose of the
prohibition.  Accordingly, defendant was on fair notice, and the judgment
should be affirmed on this basis, as well.

¶ 36.         I am
authorized to state that Chief Justice Reiber joins
this dissent.


 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate Justice (Ret.),
 Specially Assigned
 
 


 


















[1] 
The underlying criminal charges initially were filed in Windham County under
Docket No. 207-2-09 Wmcr.  Subsequently, the
court granted a motion for a change of venue, and the matter was transferred to
Windsor County under Docket No. 907-7-09 Wrcr, where
the plea agreement was entered.  In January 2010, the court issued an
order returning venue to Windham County.  Nonetheless, the probation
charges at issue here were filed in relation to the Windsor County docket
number, and although the probation-violation hearing took place in the Windham
Unit of the Criminal Division, the resulting probation-violation order bears
the docket number from Windsor County.  Therefore, in the case caption,
this opinion describes that this case originates from the Windsor Unit.

 





[2] 
Defendant moved to supplement his printed case with a modified probation order
dated September 3, 2014, in which the language of Condition 45 had been amended
to read:

 

  You must inform your [probation
officer] of the name and contact information of any person with whom you are intending
to have or are having a date or romantic sexual relationship.

(Emphasis added.) 
Defendant did not discover this document until February 17, 2015, just prior to
the oral argument in this appeal.  He contends that this modification
signals the trial court’s intent on the day of the trial and supports his
argument that the term “planning” renders the probation condition
defective.  The State disputes that this supplemental order reflects what
actually occurred in the lower court, and we agree with the State that this
dispute must be settled by the trial court.  See V.R.A.P. 10(f) (“If any
difference arises about whether the record truly discloses what occurred in the
superior court, the difference must be submitted to and settled by that court
and the record conformed accordingly.”).  In any event, the modified
language of the condition in no way impacts our decision and analysis here. 
We therefore deny defendant’s motion to supplement the printed case.





[3] 
Defendant also was charged with violating Condition 39, but that charge is not
part of this appeal.





[4]
 The State, in its closing argument, took “the evidence in the light most
favorable to the defendant” and argued that there was a violation of Condition
45 even if defendant and his housekeeper had sex only once after the more
stringent condition was imposed.  It appears that the court rendered its
decision based on this argument without explicitly finding only one incident.





[5]
 The necessity of fair notice in probation violation cases often is
phrased as a constitutional requirement, and defendant phrased it in those
terms in his brief.  In State v. Austin, we held that “a
probationer is barred from raising a collateral challenge to a probation
condition that he was charged with violating, where the challenge could have
been raised on direct appeal from the sentencing order.”  165 Vt. 389, 401, 685 A.2d 1076, 1084 (1996).  We
noted, however, that we have allowed constitutional challenges in revocation
proceedings “when the alleged constitutional infirmity became apparent only as
applied to the facts of the alleged violation.”  Id. at 401 n.3, 685 A.2d at 1084 n.3.  The prohibition
applies only where the probationer is making a facial challenge to the
condition.  To the extent defendant here is making a constitutional
challenge, it is an as-applied challenge not prohibited by Austin. 
Indeed, if defendant prevails, the result will be that the revocation of his
probation will be reversed, but the probation condition will remain and may be
applied to different facts in the future.





[6]
 A variation of this condition that required prior notice to the probation
officer before beginning a “dating or romantic relationship” was challenged
unsuccessfully in State v. Maddox, resulting in a three-justice nonprecedential decision.  Nos.
2010-194/5/6, 2011 WL 4979925, *1 (Vt. Jan. 27, 2011) (unpub.
mem.), https://www.vermontjudiciary.org/LC/unpublishedeo.aspx.  The
language of the condition in that case was similar but did not include the term
“sexual relationship.”

 

The term “sexual relationship” appears in a number of
our cases, but we have not yet been asked to define the term.  See, e.g., State v. Gonyaw, 146
Vt. 559, 560, 507 A.2d 944, 946 (1985).  The term also appears in
the definition of “household members” in the Abuse Prevention Act, but it is
not separately defined by the statute, and the statute provides no context for
determining its meaning.  See 15 V.S.A. § 1101(2).

 





[7]
 We emphasize that we are not dealing with the term “sexual relations,”
which appears to encompass a much broader range of activity.  See Black’s
Law Dictionary 1584 (10th ed. 2014) (defining “sexual relations” as any
“physical sexual activity that does not necessarily culminate in intercourse”). 
We acknowledge that if that were the term used in the condition, the State’s
position would be much stronger.





[8]
 The State has cited other cases that involve somewhat similar language
but not involving challenges to the language at issue here.  See, e.g., McVey v. State, 863 N.E.2d 434, 448-49 (Ind. Ct.
App. 2007).  We do not find these cases helpful.

 





[9]
 The question in Bates was whether the term “sexual relationship” was
vague for the purposes of applying a rule of evidence.  As we do here, the
Alaska Supreme Court recognized that the answer depended upon the facts
involved.  In Bates, the defendant was described as the victim’s
boyfriend with whom she had been dating and having sex for four years. 
The court observed that “[i]t is true . . . that
there will inevitably be borderline or difficult cases—cases where the facts do
not clearly disclose whether the attachment or association between the two
people is a ‘continuing’ one . . . .  But these
difficulties are not present in [this] case.”  258 P.3d
at 860. 

 





[10]
 As in Bates, the court in Williams viewed the issue as
depending, in part, upon the nature of the relationship, holding that the term
was not unconstitutionally vague with respect to the defendant who had been
living with and having sexual intercourse with the victim.  Williams,
924 N.E.2d at 128.





[11] 
This quotation is commonly attributed to Edmund Burke, as paraphrased by
Justice Holmes.  See O. W. Holmes, Jr., Address at Brown University
Commencement, 1897, in 3 The Collected
Works of Justice Holmes 518 (Sheldon M. Novick, ed.,
1995).   

 





[12] 
See What Clinton Said, Wash. Post, Jan. 26, 1998
(quoting president Clinton’s statement: “I did not have sexual relations with
that woman.”).  





[13] 
The woman’s recollection was of two sexual contacts, while defendant’s
recollection was three, but it is defendant’s understanding of what constitutes
a “sexual relationship” that is principally relevant here.