2011 VT 34

**STATE of Vermont v. Jason L. SANVILLE**

[22 A.3d 450]

No. 09-360

¶ 1. March 29, 2011. The question before the Court in this case is what style of civil discourse may constitute "threatening behavior." Defendant appeals from the trial court's revocation of his probation for violating a condition that read, "Violent or threatening behavior is not allowed at any time." He contends that he could not have violated the condition because his only action was speaking with no accompanying physical conduct. We reverse because the condition failed to thoroughly apprise defendant of the conduct prohibited.

¶ 2. In 2000, defendant pleaded guilty to a charge of sexual assault on a minor and was sentenced to a term of three to eleven years, all suspended. The court placed him on probation subject to a series of standard and special conditions. In the ensuing years he twice violated the probation conditions — once for failing to complete a required therapy program and once for being in the presence of minors without authorization from his parole officer — and subsequently served time in jail. In December 2008, while defendant was again out on probation, his mother entered into a rental agreement for the lease of a mobile home in Bakersfield, Vermont. Defendant, with the landlord's knowledge, lived in the trailer with his mother and performed some repairs on the property in lieu of a portion of the rent. In March 2009, the landlord claimed that some rent was past due and that defendant had failed to complete some of the agreed-upon repairs. Defendant disputed those claims. Ultimately, as a result of the nonpayment of rent, the landlord began eviction proceedings and attempted to sell the mobile home.

¶ 3. In response, defendant quarreled with the landlord, at times suggesting he would destroy the mobile home, undo the repairs he had made, and, on at least one occasion, saying he was going "to kick [landlord and her husband's] butts." At no time, however, did he approach or make a physical gesture towards the landlord. She described how "he'd start to get huffy, so he'd walk away. And he'd start mouthing off . . . as he'd go towards the trailer." One day, after the landlord showed the home to a prospective buyer, she and defendant got into an especially heated argument, and defendant said he was going to burn the trailer down. Following this incident, defendant's probation officer filed a violation of probation

complaint against him,* specifically noting that he had violated standard condition "M" by "ma[king] threats to burn down the trailer."

¶ 4. At the violation of probation merits hearing, defendant denied directly threatening the landlord. He admitted he was angry with her and had told her he would remove the repair work he had done. The landlord contradicted this testimony, confirming defendant's threats to burn the home down and the other verbal threats to herself and her husband. She also stated that defendant had not threatened her in a physical manner. However, she testified that she believed his threats because she had previously seen displays of his temper.

¶ 5. While contesting the violation on the merits, defendant simultaneously moved to dismiss the complaint on the ground that his only actions were verbal, and he never undertook any violent or threatening conduct. Defendant argued that "threatening behavior" requires "the presence of a conduct component," some threatening physical act. He also claimed that the probation condition was unconstitutionally vague and overbroad and infringed upon his First Amendment rights to "free personal expression." The trial judge denied the motion and found defendant had violated condition "M." The court held that "[d]efendant's repeated statements, made in angry tones over a course of weeks[,] to harm [the landlord] and to damage her property, constituted threatening behavior within the meaning of the law." The court rejected defendant's constitutional argument, and imposed defendant's underlying sentence. He timely appealed.

¶ 6. Defendant essentially raises the same arguments before this Court that he

---

* The complaint also alleged another violation of probation, which the trial court dismissed and which is not before this Court.

presented in his motion to dismiss. He suggests that the phrase "violent or threatening behavior" necessarily requires conduct, which in turn involves some physical action. He cites to a number of our previous decisions — all by nonprecedential, three-justice panels — where we addressed violations of this same condition of probation. Compare State v. Judkins, No. 2002-049, 2002 WL 34422596, at *2 (Vt. Aug. 22, 2002) (unpub. mem.), available at: http://www.vermontjudiciary.org/d-upeo/upeo.aspx (affirming finding of violation of probation where defendant threatened wife with knife) with State v. Lee, No. 2000-062, slip op. at 2 (Vt. Mar. 28, 2001) (unpub. mem.) (reversing finding of violation where defendant followed complaining witness to several locations and repeatedly yelled at her because evidence was insufficient to support a finding defendant "engaged in 'threatening' behavior"). In its decision, the trial court relied on an alternate three-justice decision where this Court upheld a violation of condition "M" when the probationer made a telephone call to another individual, threatening to "get" him. State v. Bessette, No. 2007-279, 2008 WL 2766845, at *1 (Vt. June 19, 2008) (unpub. mem.), available at: http://www.vermontjudiciary.org/d-upeo/upeo.aspx.

¶ 7. The above-cited decisions notwithstanding, we recognize that "[t]he question of whether verbal threats constitute threatening behavior in the context of probation conditions has yet to be decided by this Court." State v. Gilbert, 2009 VT 7, ¶ 7, 185 Vt. 602, 969 A.2d 125 (mem.) (declining to reach issue because it was unpreserved and defendant failed to show plain error). Reviewing a trial court's conclusion that a defendant violated his probation presents a mixed question of law and fact. State v. Woolbert, 2007 VT 26, ¶ 8, 181 Vt. 619, 926 A.2d 626 (mem.). The trial court first makes a factual determination of the probationer's actions and then makes an implicit legal conclu-

sion that the probationer's actions violated his probationary terms. *Id.* On review, we uphold the court's findings if supported by credible evidence. *Id.* We will uphold the court's legal conclusion if it was reasonably supported by the findings and does not constitute an erroneous interpretation of the law. *Id.* As defendant does not challenge the court's findings, we focus on the court's legal determination.

¶ 8. To be charged with violating probation, a defendant must have notice "before the initiation of a probation revocation proceeding" of what circumstances will constitute a violation of probation. *State v. Hammond,* 172 Vt. 601, 602, 779 A.2d 73, 75 (2001) (mem.) (quotation omitted). "Due process requires" that such notice inform him "as to what acts may constitute a violation of his probation, thereby subjecting him to loss of liberty." *State v. Gleason,* 154 Vt. 205, 216, 576 A.2d 1246, 1252 (1990) (quotation omitted); accord *United States v. Simmons,* 343 F.3d 72, 81 (2d Cir. 2003) ("Due process requires that the conditions of supervised release be sufficiently clear to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." (quotation omitted)). While the notice may come in the form of a probation order presented for the defendant's signature, still, "the defendant is entitled to know what conduct is forbidden before the initiation of a probation revocation proceeding." *State v. Bubar,* 146 Vt. 398, 405, 505 A.2d 1197, 1201 (1985).

¶ 9. As related to this case, the terms of condition "M" did not fairly inform defendant of what actions might subject him to probation revocation. While violent behavior may be more self-evident, what constitutes threatening behavior is less clear. In other contexts we have observed that sending threatening letters to a potential witness constituted a "threat" and was sufficient to support an obstruction-of-justice charge. *State v. Ashley,* 161 Vt.

65, 72, 632 A.2d 1368, 1372 (1993) (quoting Black's Law Dictionary 1480 (6th ed. 1990) defining "threat" as "communicated intent to inflict physical or other harm"), *superseded by statute on other grounds* as recognized by *State v. Tavis,* 2009 VT 63, ¶ 6, 186 Vt. 554, 978 A.2d 465 (mem.). We also noted that "the word 'threaten' includes some element of volition" and "[t]hreatening behavior is behavior that communicates the requisite intent." *State v. Cole,* 150 Vt. 453, 456, 554 A.2d 253, 255 (1988). Here, the landlord described the conduct which resulted in defendant's current incarceration as "mouthing off" as he walked away from her.

¶ 10. Defendant did no more than argue with his landlord. He was mouthy and obnoxious, but did nothing beyond expressing his displeasure at a perceived injustice. The idea that such behavior could properly be considered either "violent or threatening" or that the language of the condition could fairly apprise probationer that he must curb his tongue in any heated exchange or risk further incarceration is to stretch its meaning impermissibly. As written, condition "M" did not afford defendant a "reasonable opportunity to know what [actions were] prohibited, so that he [might] act accordingly." *United States v. Reeves,* 591 F.3d 77, 81 (2d Cir. 2010) (quotation omitted). In *Reeves,* the Second Circuit wrote "[a] condition is unconstitutional if it is so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Id.* (quotation omitted). We find much the same difficulty here.

¶ 11. We do not question the trial court's findings that defendant had a testy relationship with his landlord and made disrespectful comments to her and her husband on several occasions. But the conclusion that his choice of words to express his anger and frustration violated his conditions of probation was erroneous. Defendant's comments to his landlord

push the boundaries of appropriate behavior for someone in the process of criminal rehabilitation, but it cannot be said that he was fairly informed that such bluster would result in his loss of freedom — the condition is simply too vague. See *Woolbert*, 2007 VT 26, ¶ 29 (Skoglund, J., concurring) (highlighting importance of informing probationers about behaviors that "can constitute 'threatening and violent behavior' sufficient to violate their probation"); cf. *State v. Duffy*, 151 Vt. 473, 478, 562 A.2d 1036, 1039 (1989) (declining to accept defendant's interpretation of probation conditions which would effectively create "a strait-jacket that defies common sense").

¶ 12. *Bessette*, upon which the trial court relied, is not at odds with our decision in this case. There, probationer was originally charged with lewd or lascivious conduct, and the State reduced the charge to three misdemeanors and he was convicted. We held that the probationer's threatening telephone call to the victim evinced an intent "to stalk [the victim] for the purpose of injuring him or her," which was sufficiently threatening behavior to violate this same condition "M." *Bessette*, No. 2007-279, 2008 WL 2766845, at *2. We recognized that this behavior was adequate to warrant criminal charges against the probationer, see 13 V.S.A. § 1027(a) (criminalizing act of making telephone call and threatening to "inflict injury or physical harm to the person or property of any person"), and communicated the requisite intent to do harm. See *Cole*, 150 Vt. at 456, 554 A.2d at 255. Unlike the phone call in *Bessette*, the comments at issue here did not necessarily "communicate intent to inflict physical or other harm." *Ashley*, 161 Vt. at 72, 632 A.2d at 1372 (quotation omitted). Nor did they constitute a separate offense. Contrary to the State's position, we find no support that defendant's acts could have given rise to a charge of disorderly conduct under 13 V.S.A. § 1026. See *State v.*

*Albarelli*, 2011 VT 24, ¶ 9, 189 Vt. 293, 19 A.3d 130 (noting "the language of the [disorderly conduct] statute properly interpreted proscribes conduct, not speech"). Nor do we agree that because the use of "abusive or obscene language" in a "public place" is criminalized by the disorderly conduct statute, see 13 V.S.A. § 1026(3), defendant's mouthing off was sufficient behavior to violate either that statute or condition "M." The condition simply does not clearly supply as broad a prohibition as the trial court concluded. See *State v. Rivers*, 2005 VT 65, ¶ 16, 178 Vt. 180, 878 A.2d 1070 (reversing probation violation where probation officer's application of condition to circumstances represented an "interpretation" that was "not . . . evident from [the condition's] plain language").

¶ 13. We also note, without deciding, that were the condition to prohibit probationer's use of what for him may be standard vocabulary, it would be difficult to find it "reasonably related to [defendant's] rehabilitation or necessary to reduce risk to public safety." 28 V.S.A. § 252(b)(18) ("The court shall not impose a condition prohibiting the offender from engaging in any legal behavior unless the condition is reasonably related to the offender's rehabilitation or necessary to reduce risk to public safety."); see also *State v. Peck*, 149 Vt. 617, 622-23, 547 A.2d 1329, 1333 (1988). Even the landlord recognized that petitioner was merely "mouthing off." While we do not rule on the issue today, it is difficult to see how such a condition — especially as enforced by the trial court — is reasonably related either to defendant's rehabilitation or to reducing the risk to public safety under these circumstances such that it could withstand constitutional scrutiny. Cf. *Woolbert*, 2007 VT 26, ¶¶ 1-2 (affirming defendant's violation of condition "M" imposed following his conviction for sexual assault on a minor).

*Reversed.*