NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 36

No. 2016-137

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Bennington Unit, |
| | Criminal Division |
| | |
| Patricia Kane | November Term, 2016 |

David A. Howard, J.

Alexander Burke, Bennington County Deputy State's Attorney, Bennington, for
  Plaintiff-Appellee.

Charles S. Martin of Martin & Associates, Barre, for Defendant-Appellant.


PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1.     **SKOGLUND, J.**  Defendant Patricia Kane appeals the trial court's conclusion that she violated a special probation condition requiring her to abide by electronic monitoring, specifically a global position system (GPS) monitor.  On appeal, she claims that the condition was an improper delegation of authority, failed to notify her of the conduct constituting a violation, and violated her constitutional right to travel and her right to be free of unreasonable searches.  Defendant also claims that, after the probation revocation hearing, the court improperly imposed defendant's original conditions, including the electronic monitoring condition.  We affirm.

¶ 2.     Because defendant took her son from his legal custodian and crossed state lines, the State charged her with second degree unlawful restraint under 13 V.S.A. § 2406(a)(3) and custodial

interference pursuant to 13 V.S.A. § 2451. An information and accompanying affidavit were filed on January 28, 2014, the same day a warrant was issued for defendant's arrest. Defendant was arrested and arraigned on January 31, 2014. Subsequently, on July 8, 2014, she pled guilty to the custodial interference charge, and the State dismissed the unlawful restraint charge.

¶ 3. After a contested sentencing hearing on October 2, 2014, the court sentenced defendant to two to five years, all suspended, except for one year. Additionally, the court imposed conditions A-S and several special conditions. Those special conditions included Condition 32, which required defendant to "abide by all electronic monitoring as directed by your probation officer," and Conditions 33-35, which directed defendant to stay 500 feet from her son's school and residence, to avoid contacting her son without authorization from the court or the Department for Children and Families (DCF), and to obey all DCF orders. Defendant did not directly appeal these conditions.

¶ 4. After serving the unsuspended portion of her sentence, defendant was released to the community on the probation conditions imposed by the court. Under Condition 32, the Department of Corrections (DOC) required defendant to be electronically monitored using a GPS unit. The GPS unit used to monitor defendant has three components: the first part, the base charging station, connects to a standard electrical outlet and to defendant's telephone landline; the second component, an ankle bracelet, is a small black box that is permanently attached to defendant's ankle with a rubber strap; and the third piece is an XT unit, which must be worn by defendant unless it is being charged. To maintain a charge, the XT unit must be charged in the base charging station for two hours, twice a day, for a total of four hours. While the XT unit is charging, defendant must remain close to the base charging station.

¶ 5. The GPS unit reports defendant's location and any violations either via cellular service or via the base charging station's landline connection. If there is no cellular service—as is true at defendant's home—the GPS unit does not report defendant's location until the XT unit

links with the base charging station and the data can be uploaded using the base charging station's landline connection. When defendant commits certain violations, such as remaining out past curfew or allowing the battery to deplete, a text message displays on the XT unit explaining how defendant can fix the issue; for example, the message instructs defendant to return home or to place the XT unit in the charger. Similarly, if defendant disconnects the base charging station's landline connection and cellular service is unavailable in the area, a message indicates that the base charging station and XT unit are unable to connect. Violations such as these are recorded by the 3M Electronic Monitoring Website, and an email alert is sent to a community corrections officer (CCO). CCOs are responsible for managing electronic monitoring and communicating with defendant and her probation officers regarding compliance. Generally, after receiving an email alert, a CCO will contact defendant and attempt to remedy the violation.

¶ 6.    Over the course of several months—November 3, 2015, December 31, 2015, and February 2, 2016—the State charged defendant with three violations of probation (VOPs) involving her GPS unit and curfew.[1]  A VOP revocation hearing on these three VOPs began on March 31, 2016.[2]

¶ 7.    The State's case began with the testimony of defendant's first probation officer. The probation officer testified that the alleged November 2015 violation was based on defendant's failure to charge her XT unit twice daily and, as a result, defendant's failure to abide by all electronic monitoring as directed by the probation officer. Despite the charging requirement and

---

[1]  Previously, on March 25, 2015, defendant was charged with a VOP involving a different issue; defendant admitted to this violation on June 10, 2015, and her original probation conditions were reimposed.

[2]  On July 6, 2015, the State charged defendant with a VOP based on new criminal conduct. While this VOP charge was pending, the State charged defendant with the three VOPs involving her GPS unit. Because the July 6, 2015 VOP charge was based on new criminal conduct that had not been resolved, the merits of the March 31, 2016 VOP hearing were limited to allegations that defendant violated Condition 32—the electronic monitoring condition—and did not involve claims of new criminal behavior.

3

the probation officer's attempts to address the charging problem without filing a VOP, defendant repeatedly and continually failed to charge the XT unit, including a period during which the unit was not charged for forty-eight hours. When questioned about her inability to keep the XT unit charged, defendant variously told the officer that it was not convenient to charge when she travelled, that her rabbit chewed the charger's cord, and that she did not believe that she should be monitored with a GPS unit. Without the GPS unit, the probation officer testified that she could not effectively monitor defendant or ensure that defendant did not violate the condition requiring her to stay five hundred feet from her son's school and residence.

¶ 8. The next witness for the State was the probation officer's supervisor. The supervisor corroborated the probation officer's testimony that keeping the GPS unit charged was an ongoing issue. According to the supervisor, defendant first explained that she could not keep the unit charged because of a defective base charging station, so the probation office provided her with a new unit. The supervisor also reiterated that the electronic monitoring condition, as implemented with a GPS unit, was a necessary condition based on defendant's conviction.

¶ 9. Probationer's CCOs testified to similar effect. The first CCO testified that defendant failed to keep the XT unit charged, despite clear instructions that the unit should be charged twice daily, for two hours at a time. For example, on October 4, 2015, the CCO received an email alert that the XT unit's battery was dead; when the officer contacted defendant, she explained that a rabbit chewed the charger cord and that she was in Newport, Vermont, and unable to get a new charger at that time. Likewise, another CCO testified that, although he had many conversations with defendant about keeping her XT unit charged, a printed report demonstrated multiple instances when the unit was not charged. In general, moreover, all of the CCOs indicated that they never discovered any mechanical issue with the GPS unit when they inspected it.

¶ 10. Defendant's second probation officer testified to the basis for the February 2016 VOP charges, which also involved violating the rules of the electronic monitoring condition.

According to this probation officer, defendant failed to comply with the electronic monitoring requirement almost daily. Moreover, like defendant's first officer, the second officer testified that monitoring was required based on the circumstances of defendant's conviction, specifically to ensure that she was not contacting her son.

¶ 11. The second probation officer's testimony was reinforced by another CCO's testimony. This CCO testified that he began monitoring defendant in early January 2016 and, during an eighteen-day period, he noticed ninety-six violations. Primarily, these violations involved disconnecting the base charging station from the telephone landline and plugging only the defendant's home phone into the landline, including a period when the base charging station was disconnected from the landline for sixty-eight hours. According to the CCO, defendant explained that she disconnected the base charging station because the unit periodically made the sound of a fax machine on her home phone and this sound made the phone unusable. But the CCO indicated that he did not find any problem with the phone line or the base charging station when he tested the line.

¶ 12. Defendant, who represented herself at the VOP hearing, did not present any evidence. In her closing arguments, she argued that the electronic monitoring condition was an improper delegation of authority to the probation officers, that the lengthy electronic monitoring period was excessive given that she was a nonviolent offender, and that her probation could not be revoked solely on the basis of the accumulating technical violations, without considering her intent and other behavior during the time period. The State countered by claiming the evidence established defendant had repeated opportunities to comply with the electronic monitoring requirement and continually failed to do so, including a number of lengthy instances when the GPS unit was disconnected. Given the repeated and substantial violations, the State requested that the court revoke probation and require defendant to serve the remainder of her sentence.

¶ 13.  In an oral decision from the bench, the court found that defendant violated Condition 32, the electronic monitoring condition.  First, the court reiterated its previous conclusion that a legitimate purpose existed for imposing Condition 32 based on the nature of the offense and the need to ensure defendant did not contact her son without permission.[3]  The court found that credible and convincing evidence established that defendant violated this valid condition by willfully failing to abide by the monitoring requirements, including a number of times when the GPS unit was not working for lengthy periods of time.  The court acknowledged that some instances when the GPS unit malfunctioned did not appear to be defendant's fault.  The court further concluded, however, that the length of time the GPS unit was unconnected could not be credibly attributed to a phone call or to a mistakenly charged battery, and instead demonstrated that defendant willfully chose not to abide by Condition 32.  After finding defendant violated her probation conditions,[4] the court revoked her probation but did not impose the full remaining sentence.  Instead, given the facts of the underlying charge and defendant's lack of criminal history, the court split defendant's sentence again, so that the modified sentence imposed was two to five years, all suspended, except for eighteen months with credit for time served.  In addition, the court

---

[3]  The court had reached this conclusion in a November 20, 2015 decision denying defendant's motion to vacate Condition 32.  In that decision, the court found that

> [Condition 32] was a reasonable and necessary one on the specific facts of defendant's case.  Considering her conviction was for taking her son out-of-state, keeping track of her movements is necessary for the proper supervision of her case.  . . . This [] eliminates the need for even more restrictive conditions, such as strict curfews or strict limitations on travel over all.  The condition is reasonable in that it is not unnecessarily harsh or excessive in achieving these goals. . . . [And e]ven if it were to be determined that the 4th Amendment applies here, the court finds this GPS condition is not an unreasonable search under that protection considering the above need for it.

[4]  The record indicates that court found only two violations, but does not reflect the court's determination regarding the third violation.

continued the same probation conditions as defendant's original sentence, including the electronic monitoring condition.

¶ 14. Probationer appealed to this Court. We review a trial court's conclusion that a defendant violated a probation condition in two steps. State v. Bostwick, 2014 VT 97, ¶ 11, 197 Vt. 345, 103 A.3d 476. First, we "examine the trial court's factual findings" and will "uphold them if supported by credible evidence." Id. (quotation omitted). Next, we look to the trial court's legal conclusions, affirming them if they are "reasonably supported by the findings and [do] not constitute an erroneous interpretation of the law." Id. (quotation omitted).

¶ 15. On appeal, defendant argues that Condition 32 was an improper delegation of authority to the probation officer, that the condition failed to notify defendant of the conduct constituting a violation, and that Condition 32 violated defendant's constitutional rights because the condition is a warrantless search and unduly burdens defendant's privacy and travel rights. In addition, defendant claims that the court erred when it continued defendant's original conditions, including the electronic monitoring condition, after the probation revocation hearing.

I. Improper Delegation

¶ 16. Defendant's first claim is a collateral attack on Condition 32 and is therefore barred. We have previously held "that a probationer is barred from raising a collateral challenge to a probation condition that he [or she] was charged with violating, where the challenge could have been raised on direct appeal from the sentencing order." State v. Austin, 165 Vt. 389, 401, 685 A.2d 1076, 1084 (1996).

¶ 17. In this case, there was a contested sentencing hearing before the trial court in October 2, 2014. At this hearing, the court had the opportunity to take evidence and to make factual findings to support the conditions of probation, including Condition 32. Defendant did not appeal the condition or the adequacy of the court's findings in support of the condition. Cf. State v. Lucas, 2015 VT 92, ¶ 14, 200 Vt. 239, 129 A.3d 646 (noting that by failing to appeal potentially

7

broad probation condition, defendant gave up ability to challenge adequacy of findings). Further, defendant filed multiple motions to modify her sentence, which the court denied, and most recently filed a motion to vacate Condition 32. As described above, on November 20, 2015, the court denied defendant's motion to vacate, reiterating that Condition 32 was reasonable and necessary based on the specific facts of the case. Again, defendant did not appeal this determination. Thus, defendant has had several opportunities to challenge the validity of the condition. See Austin, 165 Vt. at 402, 685 A.2d at 1085.

¶ 18. Now, in this appeal, defendant claims that our precedent renders this condition invalid because Condition 32 allowed "the probation officer to independently establish conditions." In particular, she references a line of cases beginning with State v. Moses that distinguish between permissible conditions, which provide probation officers with the authority to implement conditions, and impermissible conditions, which give probation officers open-ended authority to create probation conditions. 159 Vt. 294, 300, 618 A.2d 478, 482 (1992). By its language, however, this argument is a facial challenge to the imposition of Condition 32, and thus is barred as a collateral attack on the condition.[5] Austin, 165 Vt. at 402, 685 A.2d at 1085; see also State v. Gauthier, 2016 VT 37, ¶ 13, __ Vt. __, 145 A.3d 833 ("[D]efendant may not collaterally attack the conditions on a basis that could have been brought in a direct appeal.")

---

[5] To the limited extent that defendant argues her probation officer exceeded the scope of Condition 32 when implementing the electronic monitoring condition, we do not agree. Condition 32 indicates that defendant "must abide by all electronic monitoring as directed by [her] probation officer." The plain language of this condition gives the probation officer the authority to direct defendant's electronic monitoring, and defendant did not abide by the officer's directions, including the officer's requirement that the GPS unit remained charged. Cf. State v. Bostwick, 2014 VT 97, ¶ 19, 197 Vt. 345, 103 A.3d 476 (reversing violation finding where probation officer's direction was "nonexistent").

## II.  Lack of Notice

¶ 19.  Defendant's next claim is that she did not have notice of what conduct constituted a violation of Condition 32.  This argument is not barred as an improper collateral attack.  Gauthier, 2016 VT 37, ¶ 16 ("To the extent defendant's argument is about lack of notice, it is not an impermissible collateral challenge." (quotation omitted)).  Because defendant did not raise her ineffective notice claim below, however, we review the claim for plain error.  Id.  "Plain error exists only in extraordinary situations where the error is obvious and strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice."  Lucas, 2015 VT 92, ¶ 9 (quotation and alteration omitted).  We conclude no error occurred here, let alone plain error.

¶ 20.  "To be charged with violating probation, a defendant must have notice before the initiation of a probation revocation proceeding of what circumstances will constitute a violation of probation."  State v. Sanville, 2011 VT 34, ¶ 8, 189 Vt. 626, 22 A.3d 450 (quotation omitted) (mem.).  To satisfy this due process requirement, offenders must be "given a certificate explicitly setting forth the conditions upon which he or she is being released."  28 V.S.A. § 252(c).  But we have also held that fair notice may be "provided by the instructions and directions given to defendant by his or her probation officer," as well as the probation agreement.  State v. Peck, 149 Vt. 617, 619-20, 547 A.2d 1329, 1331 (1988).

¶ 21.  Here, based on the facts stated on the record, defendant had notice of the probation terms and simply chose not to abide by them.  First, defendant signed the probation agreement containing Condition 32.  The signed agreement demonstrates defendant knew that she was required to abide by all electronic monitoring as directed by her probation officer.  Id. at 620, 547 A.2d at 1331.  Similarly, defendant's multiple motions to modify her conditions or to vacate Condition 32 further evince her knowledge of Condition 32's requirements.  And finally, although Condition 32 did not specifically require defendant to keep the GPS unit charged or to keep the unit plugged into her landline, these precise requirements were not only implied by the condition's

9

focus on electronic monitoring, but explicitly conveyed to defendant on numerous occasions by her probation officers and CCOs, prior to the State filing the VOP charges. The directions provided by her probation officers and CCOs sufficiently warned defendant of the conduct that would cause a violation. See id. at 619-20, 547 A.2d at 1331 (affirming violation of condition requiring participation in counseling "as directed by his probation officer" where defendant did not complete counseling); see also State v. Emery, 156 Vt. 364, 373, 593 A.2d 77, 82 (1991) (upholding violation of condition when "defendant received a general warning from the text of his probation agreement that he would be required to complete any rehabilitation program chosen by his probation officer" and later received more specific instructions from his probation officer). Under these circumstances, we conclude that defendant had notice of the conduct giving rise to a violation, and that the court did not err when it determined that defendant knowingly failed to abide by Condition 32.

### III. Constitutional Claims

¶ 22. Defendant's third argument is that, as applied,[6] Condition 32 infringes on three of her state and federal constitutional rights: the right to travel; the right to privacy; and the right to be free from unreasonable searches and seizures. Defendant did not raise any of these arguments

---

[6] Defendant also claims that Condition 32 is facially invalid. But, like defendant's improper delegation claim, her argument that Condition 32 is facially unconstitutional is barred as a collateral attack on a probation condition. In State v. Austin, during his probation revocation hearing, the defendant raised, for the first time, a constitutional challenge to a urinalysis condition on the basis that the condition infringed on his right to be free from unreasonable searches and seizures. 165 Vt. 389, 401, 685 A.2d 1076, 1084 (1996). Because "the [constitutional] challenge could have been raised on direct appeal from the sentencing order," we concluded that the defendant's challenge was barred. Id. at 402, 685 A.2d at 1085. But we also noted in Austin that this bar was limited to "only those circumstances where, as here, the probationer could have raised a facial challenge to the condition's constitutionality at the time the condition was imposed." Id. at 401 n.3, 685 A.2d at 1084 n.3; see also State v. Galanes, 2015 VT 80, ¶ 9 n.5, 199 Vt. 456, 124 A.3d 800 ("The prohibition applies only where the probationer is making a facial challenge to the condition. To the extent defendant here is making a constitutional challenge, it is an as-applied challenge not prohibited by Austin."). Thus, we address defendant's as applied challenge, but do not consider her facial challenge.

below; therefore, we review her constitutional claims for plain error. State v. Gleason, 154 Vt. 205, 211, 576 A.2d 1246, 1249 (1990) (concluding that, where defendant failed to raise constitutional argument during revocation hearing, "the trial court's decision will stand unless the revocation of defendant's probation for the violation of [the special condition] constitutes plain error").

## A. Right to Travel

¶ 23.   We conclude that, as applied to defendant, Condition 32 did not limit her right to travel and, as a result, there was no error.  Based on the condition's plain language, Condition 32 is not a restriction on travel, but a requirement that she abide by electronic monitoring.  State v. Galanes, 2015 VT 80, ¶ 13, 199 Vt. 456, 124 A.3d 800 ("When interpreting the language of a probation condition, we look first to the plain and ordinary meaning of the terms.").  Thus, defendant's travel claim rests on two assumptions allegedly implied in Condition 32: that, by traveling, defendant will be unable to charge her GPS unit or locate a landline if the unit is out of cell range and that, as a result, she is prohibited from travelling locally or internationally because travel will violate Condition 32.

¶ 24.   But defendant, as a probationer, had no general right to travel beyond a specified area.  State v. Levitt, 2016 VT 60, ¶ 25, 148 A.3d 204.  Here, another of defendant's conditions— Condition I—already prohibited defendant from leaving the state without her probation officer's permission.  More important, the record is devoid of any evidence suggesting that Condition 32 actually prevented defendant from traveling either in state or out of state.  Rather, one of the CCOs testified that electronic monitoring specifically allowed defendant to travel, as long as the GPS unit remained charged.  The concerns surrounding the GPS unit did not arise from defendant's travel, but from the inability to locate defendant when she traveled, if the GPS unit was not charged.  Absent the ability to locate defendant, defendant's probation officers could not ensure that defendant would not violate the other special conditions prohibiting contact with her son or

11

coming within five hundred feet of his home or school. Therefore, because defendant did not have a right to travel and Condition 32 did not actually restrict defendant's travel, there was no error.

### B. Right to be Free of Unreasonable Searches

¶ 25. Defendant claims that Condition 32 was an unreasonable search under the Fourth Amendment of the U.S. Constitution and Article Eleven of the Vermont Constitution. Because our analysis follows slightly different paths, we address defendant's Fourth Amendment and Article Eleven arguments separately.

### i. Fourth Amendment

¶ 26. Placing a GPS device on a person's body to track the person's movements is a trespass that constitutes a search under the Fourth Amendment.[7] See Grady v. North Carolina, __ U.S. __, 135 S. Ct. 1368, 1370 (2015) (per curiam) ("[A] State also conducts a search when it attaches a device to a person's body, without consent, for the purpose of tracking that individual's movements.").[8] Whether or not a search is reasonable under the Fourth Amendment depends "on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." United States v. Knights, 534 U.S. 112, 119 (2001) (quotation omitted); see also Grady, 135 S. Ct. at 1371 ("The Fourth Amendment prohibits only unreasonable searches. The reasonableness of a search depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations.").

---

[7] The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

[8] Because we conclude the search was reasonable under the Fourth Amendment, we do not address whether defendant's acceptance of the probation conditions constituted a waiver of her Fourth Amendment rights. See United States v. Knights, 534 U.S. 112, 118 (2001).

¶ 27. In examining defendant's privacy expectations under Fourth Amendment jurisprudence, her status as a probationer is a salient part of the inquiry. Knights, 534 U.S. at 119. This is because probationers do not possess the absolute liberty enjoyed by law-abiding citizens. Id. Instead, probation is "one point . . . on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service." Griffin v. Wisconsin, 483 U.S. 868, 874 (1987). Thus, because of the probation restrictions imposed on defendant, such as conditions A-S and the special conditions, defendant had a diminished expectation of privacy. That privacy expectation was further reduced by the text of Condition 32, which clearly warned defendant that she would be subject to electronic monitoring when she agreed to the condition, and by the CCOs repeated reminders that defendant must abide by the condition. See Knights, 534 U.S. at 119-120; Samson v. California, 547 U.S. 843, 852 (2006) ("[Parolee] signed an order submitting to the condition and thus was unambiguously aware of it." (citation omitted)).

¶ 28. On the other hand, recent federal decisions indicate that the nature of the search—constant GPS monitoring of defendant—may violate even a probationer's diminished expectation of privacy. Viewed under a certain light, for example, "[w]hat the technology yields and records with breathtaking quality and quantity is a highly-detailed profile, not simply of where we go, but by easy inference, of our associations—political, religious, amicable and amorous, to name only a few—and of the pattern of our professional and avocational pursuits." United States v. Lambus, No. 15-CR-382, 2016 WL 7422299, at *15 (E.D.N.Y. Dec. 22, 2016) (quotation omitted). Under a different light, however, GPS monitoring is less invasive than surveillance techniques previously found to seriously infringe on privacy, such as "following [a person] around, peeking through his bedroom window, trailing him as he walks to the drug store or the local Starbucks, videotaping his every move, and through such snooping learning . . . whether he is a weekly church goer, a heavy

13

drinker, a regular at the gym, an unfaithful husband." Belleau v. Wall, 811 F.3d 929, 935 (7th Cir. 2016).

¶ 29. Given these competing arguments regarding the nature of the search, the State's purpose for continually monitoring defendant warrants careful review under federal precedent. Generally, the U.S. Supreme Court and courts applying U.S. Supreme Court precedent have concluded that the government's dual interests in monitoring probationers—rehabilitation and protecting society from future criminal violations—permits some intrusion into a probationer's privacy that would otherwise violate the Fourth Amendment. Knights, 534 U.S. at 591; Samson, 547 U.S. at 853 ("[T]his Court has repeatedly acknowledged that a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment."). In the case of GPS monitoring, the particular question is whether the purpose of the search was to gather evidence for a new criminal investigation or, instead, to implement a legitimate probation-related objective.

¶ 30. For example, in United States v. Lambus, a federal case following Grady, the government used GPS data gathered from a parolee's ankle bracelet as probable cause for several wiretap applications. 2016 WL 7422299, at *2. The district court found this purpose to be particularly troubling, noting that the government cannot use "a parolee as a sort of fly paper, trailing him around the community for years, trolling for criminals." Id. at *13. As a result, the court concluded that the government's shifting purpose—from monitoring the parolee to gathering evidence—significantly lessened the government's legitimate interests in the monitoring. Id. at *15. But in another case following Grady, the Seventh Circuit upheld a state requirement that offenders convicted of serious child sex offenses wear GPS units for the rest of their lives. Belleau, 811 F.3d at 937. Along with determining the search was "less intrusive than a conventional search," the court noted that the main objective of the monitoring was not producing evidence for

14

law enforcement purposes, but deterring future offenses. Id. at 935, 937; see also United States v. Porter, 555 F. Supp. 2d 341, 345 (E.D.N.Y. 2008) (upholding condition in part because "GPS condition is reasonably related to the objectives of sentencing").

¶ 31. In this case, the CCOs and probation officers repeatedly testified that the purpose of Condition 32 was to ensure defendant did not violate the special conditions prohibiting contact with her son. Beyond the State's general interest in rehabilitation and protection, such tracking measures were particularly relevant in this case because the underlying crime was a felony charge of removing a child from his rightful custodian and taking the child across state lines in violation of a court's custody order. Moreover, defendant's status as a probationer and her awareness of the electronic monitoring condition diminished her expectation of privacy. Thus, although we acknowledge that continual GPS monitoring may be particularly intrusive, under these circumstances, we conclude that Condition 32 is reasonable under the Fourth Amendment and that no error occurred in its application. See United States v. Miller, 530 F. App'x 335, 338 (5th Cir. 2013) ("In light of [defendant's] background, any impairments of [defendant's] privacy due to the GPS monitoring are outweighed by the condition's benefits. These include effective verification of compliance with the other conditions of supervised release, deterrence of future crimes, and protection of the public.").

ii. Article Eleven

¶ 32. Defendant also invokes Chapter I, Article Eleven of the Vermont Constitution,[9] to support her claim that Condition 32 is an unreasonable infringement on her privacy rights. Although this Court has concluded that Article Eleven "provides its own independent protection that in many circumstances exceeds the protection available from its federal counterpart," in this

---

[9] Article Eleven states: "That the people have a right to hold themselves, their houses, papers, and possessions, free from search or seizure; and therefore warrants, without oath or affirmation . . . ought not to be granted." Vt. Const. ch. I, art. 11.

case, Article Eleven does not mandate a different result than the Fourth Amendment. State v. Bogert, 2013 VT 13A, ¶ 17, 197 Vt. 610, 109 A.3d 883 (quotation omitted).

¶ 33. GPS monitoring of a probationer is a search that falls within the scope of Article Eleven. See Grady, __ U.S. __, 135 S. Ct. at 1370; Mapp v. Ohio, 367 U.S. 643 (1961) (fully incorporating Fourth Amendment against States). In Vermont, unlike the federal balancing test, to conduct the GPS monitoring at issue here, the State must first establish a "special need" that justifies departing from the warrant and probable cause requirement. Bogert, 2013 VT 13A, ¶ 17; see also State v. Berard, 154 Vt. 306, 310-11, 576 A.2d 118, 120-21 (1990) ("Whatever the evolving federal standard, when interpreting Article Eleven, this Court will abandon the warrant and probable-cause requirements, which constitute the standard of reasonableness . . . , only in those exceptional circumstances in which special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable" (quotation and alteration omitted)).[10] If such a special need exists, "we apply a balancing test to identify a standard of reasonableness, other than the traditional one, suitable for the circumstances." Bogert, 2013 VT 13A, ¶ 17.

¶ 34. This Court previously determined that probation supervision is a "special need" that allows the State to depart from the warrant and probable cause requirements. State v. Lockwood, 160 Vt. 547, 558-59, 632 A.2d 655, 662-63 (1993). Thus, the crux of our analysis involves balancing defendant's "rehabilitative needs, concerns for protection of the community, and [defendant's] Article 11 interests" to identify the standard of reasonableness applicable under the circumstances. Bogert, 2013 VT 13A, ¶ 18; see also State v. Moses, 159 Vt. 294, 305, 618

---

[10] This "special need" analysis arose from federal case law; specifically, Griffin v. Wisconsin established that probation supervision was a "special need" that made the warrant requirement impracticable and justified replacing the "probable cause" standard with a "reasonable grounds" standard. 483 U.S. 868, 875-76 (1987). Although the U.S. Supreme Court has shifted away from the "special need" framework in favor of a "totality of the circumstances" standard, see Grady, __ U.S. __, 135 S. Ct. at 1370, Vermont continues to follow the Griffin framework.

16

A.2d 478, 484 (1992) (remanding so that condition is based on "findings that set a proper balance between probationer's privacy rights and the state's special needs and is [] narrowly tailored to reflect that balance"). In particular, the resolution of this balancing hinges on the weight given defendant's status as a probationer as compared to the nature of the privacy intrusion. And two cases guide the outcome: State v. Lockwood and State v. Bogert.

¶ 35. In Lockwood, after weighing the probationer's privacy rights against public protection concerns, we held that a search of a probationer's home pursuant to a probation condition providing for warrantless searches was valid because the probation officers had "reasonable grounds" for the search. Id. at 559, 632 A.2d at 663 ("[I]f a probation term provides for warrantless searches and the terms of probation are narrowly tailored to fit the circumstances of the individual probationer, the . . . 'reasonable grounds' standard strikes the proper balance between probationer privacy rights and public protection concerns."). In Bogert, by comparison, we upheld a search of a furloughed offender's home and computer without a warrant and without reasonable suspicion. 2013 VT 13A, ¶ 26.

¶ 36. In part, we distinguished these cases based on the different spots a probationer and a furloughed offender occupy along "the continuum of possible punishments." Id. ¶ 21 n.4 (quotation omitted). In Bogert, for example, we determined that the State's interests in rehabilitation and public protection outweighed the furloughed offender's privacy expectations based on several factors. Id. ¶ 26. We acknowledged that "many of the factors identified . . . may also apply in the context of individuals on probation," but we concluded that furloughed offenders were subject to even "stronger medicine" than parolees or probationers and that, as a result, Lockwood's reasonable ground standard did not apply. Id. ¶ 26 n.4; see also State v. Cornell, 2016 VT 47, ¶ 35, __ Vt. __, 146 A.3d 895 ("[P]arolees have fewer expectations of privacy than probationers.").

17

¶ 37.    In this case, although we recognize that defendant is on probation and thus enjoys a greater liberty interest than parolees or furloughees, we do not consider that fact to be dispositive when weighed along with the nature of the search.  Defendant agreed to a clear probation condition allowing continual electronic monitoring.  The critical distinction from Lockwood and Bogert is that this condition did not authorize warrantless searches of defendant's home or possessions.  Because a person has a heightened expectation of privacy in his or her home, Article Eleven affords a special sanctity to the home.  See State v. Bryant, 2008 VT 39, ¶ 12, 183 Vt. 355, 950 A.2d 467 ("We have often noted the significance of the home as a repository of heightened privacy expectations, and have deemed those heightened expectations legitimate." (citation omitted)).  As a result, warrantless searches of the home are particularly offensive.  State v. Blow, 157 Vt. 513, 519, 602 A.2d 552, 556 (1991).  By comparison, the GPS monitoring defendant is subject to is neither a physical search of her home and possessions nor a particularly intrusive technological search.  For example, although defendant must continually wear the GPS unit, the unit only periodically uses the landline to report defendant's presence in her house, it does not continually report defendant's physical position in her home, record her conversations, or examine her possessions for contraband.  Cf. id. at 519-20, 602 A.2d at 556 (holding that monitoring defendant's conversation with electronic audio transmitter violated Article Eleven).

¶ 38.    Moreover, even though defendant's privacy expectations may be stronger than a parolee's or furloughee's, defendant still does not possess privacy expectations equivalent to a person at liberty.  At minimum, her ability to remain in the community is tied to her ability to abide by her probation conditions, curtailing her liberty interests and privacy expectations.  Other factors further weaken defendant's privacy expectations.  First, not only did defendant sign a document indicating that she would be subject to continued electronic monitoring, the court, her probation officers, and her CCOs explained the electronic monitoring condition to her multiple times.  This agreement and the subsequent explanations put defendant on notice that she would be subject to

18

electronic monitoring to further the State's rehabilitative and public-protection goals. Further, because the electronic monitoring reasonably related to the State's special need based on defendant's underlying offense, defendant knew that her privacy would be reduced to ensure the State could ascertain her location relative to her son.

¶ 39. Finally, the State's interest in monitoring defendant is strong. Generally, GPS monitoring of probationers allows the State to prevent recidivism and encourages rehabilitation in the community. In the context of this case, the State possesses limited means to ensure that defendant does not violate her conditions. The only means other than a GPS unit that the State could use to ensure defendant's compliance with the conditions are routine checks by probation officers, routine searches of her home, strict curfews and limitations on travel, or direct and continual observation of defendant or her son. Unlike these techniques, which would severely curtail defendant's liberty, the GPS monitoring is narrowly tailored to fit defendant's circumstances while allowing defendant some freedom and autonomy. See Lockwood, 160 Vt. at 558, 632 A.2d at 662; Moses, 159 Vt. at 305, 618 A.2d at 484.

¶ 40. As applied to defendant, we conclude that the warrantless and suspicionless GPS monitoring did not violate Article Eleven. Under these circumstances, defendant's limited privacy rights as a probationer do not outweigh the narrowly tailored condition, the State's strong interest in ensuring defendant's compliance, and the circumscribed nature of the search.

IV. Reimposed Probation Conditions

¶ 41. Defendant's final claim is that, after the court determined defendant violated her probation, the court erred by reimposing the same standard probation conditions and special conditions, including the electronic monitoring condition. Specifically, defendant claims that the reimposed conditions lack a sufficient nexus to her crime, are not narrowly tailored to the crime committed, and are not supported by factual findings.

¶ 42. Properly speaking, the conditions were not reimposed, but merely continued as part of defendant's original sentence. Thus, we conclude that defendant's three challenges to her probation conditions are collateral attacks on the original sentence and are barred. Austin, 165 Vt. at 401, 685 A.2d at 1084. Under 28 V.S.A. § 304(b)(5), a trial court may "[c]ontinue the probationer on the existing sentence, but require the probationer to serve any portion of the sentence." In this case, after determining defendant violated her probation, the trial court required defendant to serve an additional portion of her sentence, but maintained her original probation conditions. As such, defendant's "challenge could have been raised on direct appeal from the sentencing order" and is now barred. Austin, 165 Vt. at 401, 685 A.2d at 1084. This is particularly true here, where defendant's three facial claims could have been brought in the original proceedings,[11] the court imposed no new conditions after the probation revocation hearing,[12] and, as detailed above, defendant filed multiple motions to modify her conditions.

¶ 43. Moreover, the circumstances here fit within the justifications supporting the collateral attack rule. Defendant had notice and opportunity to respond to the original conditions and did not directly challenge her sentence. See Austin, 165 Vt. at 401, 685 A.2d at 1084. After the opportunity to appeal passed, the sentence and conditions were final. Defendant could not then privately determine that the sentencing order was incorrect and refuse to abide by the conditions. See United States v. Stine, 646 F.2d 839, 846 (3d Cir. 1981) ("Probationers are convicted offenders who have been given a second chance to demonstrate that they are capable of living in the community as law-abiding citizens. To allow them to make an independent determination of

---

[11] As discussed above, defendant is not prohibited from bringing a challenge to conditions as applied. State v. Rickert, 164 Vt. 602, 603, 665 A.2d 887, 888 (1995) (mem.) (reaching constitutional challenges on appeal from revocation order); see also United States v. Beech-Nut Nutrition Corp., 925 F.2d 604, 607 (2d Cir. 1991) (reaching due process challenge "upon application of the conditions").

[12] We do not determine whether the collateral attack bar applies to new conditions imposed after a probation revocation hearing.

which judicial orders to follow and which to ignore is simply inconsistent with the premises of probation."). After accepting the conditions with her original sentence, defendant could not facially challenge their continuation as part of her sentence.

Affirmed.

FOR THE COURT:

_____

Associate Justice

21