VERMONT SUPREME COURT

109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      24-AP-228

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

NOVEMBER TERM,   2025

State of Vermont v. Christopher Brown\*     }     APPEALED FROM:
                                            }
                                            }     Superior Court, Bennington Unit,
                                            }     Criminal Division
                                            }     CASE NO. 21-CR-07770
                                                  Trial Judge: Kerry Ann McDonald-Cady

In the above-entitled cause, the Clerk will enter:

Defendant appeals the revocation of his probation.  We affirm.

The following facts are apparent from the record.  In 2022, defendant pled no contest to charges of aggravated assault with a deadly weapon and simple assault on a protected person. He also pled guilty to driving under the influence, second offense.  He was sentenced to seven-to-ten years, all suspended except nine months to serve, and placed on probation for a six-year term to expire in July 2028.  His probation conditions included condition A, "You shall not be convicted of another crime or engage in criminal behavior," and condition 23, "You shall not engage in violent or threatening behavior."

In July 2023, defendant's probation officer filed a complaint alleging that defendant had violated conditions A and 23 after defendant was charged with first-degree aggravated domestic assault for striking and choking his sixteen-year-old nephew.  The affidavit accompanying the complaint identified the victim as "DB."

The criminal charge was dismissed before the probation-violation hearing.  At the hearing, defendant's probation officer testified that he had reviewed conditions A and 23 with defendant and the conditions were in effect at the time of the incident.     The state trooper who responded to the incident testified that when he arrived at the scene, he observed an individual named Devin whom he knew from previous interactions.  Devin was standing outside with his shirt off and had scratches on his chest and a bloodshot eye.  Photographs of Devin's injuries were admitted into evidence.

Another witness testified that he and Devin Brown were hanging out at the witness's house when defendant showed up. He testified that defendant "was all mad," and that once Devin sat down, defendant told him to stand up. Devin refused, and defendant "kept on telling him to stand up, and you know, get what he was—give it to him or whatever." Devin didn't stand up, and defendant "just hit him—like, smacked him in the face." The two started fighting and then defendant started choking Devin with his legs. The witness pulled them apart and defendant left.

In a written order, the court found that Devin Brown was the "DB" identified in the affidavit and that defendant had violated conditions A and 23.

At the sentencing hearing, Devin Brown testified that he and defendant had gotten into a fight and that he was sixteen years old at the time. He testified that he did not want to see defendant go to jail and would prefer to see defendant "go through some rehab," explaining that "[defendant]'s definitely a good—good person when he's not . . . on any substance." Defendant's wife also testified in his favor.

The State requested that the court revoke probation and impose the underlying sentence. Defense counsel argued that defendant's behavior stemmed from his drinking and that the court could address this risk through conditions such as inpatient rehabilitation, use of an alcohol monitor, and participation in Alcoholics Anonymous rather than incarcerating him. Defendant testified that he was remorseful for his behavior and wanted to make amends to his nephew, and that if released he would seek out further treatment to help him remain sober.

The court considered the original offenses, the testimony presented at the hearing, and the incident that led to the probation violation complaint. The court found that defendant was already subject to numerous conditions, including prohibitions against alcohol or unprescribed drug use, and that defendant had appeared to be doing well on probation. Despite these conditions and defendant's apparent success, he attacked and injured his nephew without provocation. This indicated to the court that the conditions were insufficient to deter defendant from violent behavior. The court therefore revoked defendant's probation and imposed the full underlying sentence.

The court subsequently issued an order stating that it had improperly considered defendant's prior criminal history in fashioning his sentence, and that it would therefore set the matter for a new sentencing hearing. At the second hearing, the parties did not present any further evidence. Defense counsel argued that the court should not revoke probation and instead should impose further conditions or order defendant to serve a shorter portion of the underlying seven-to-ten-year sentence.

In a written order, the court found that imposing a split sentence would only serve the goal of punishment. It found that defendant's alcohol and mental-health issues could not be managed by probation supervision and that his existing probation conditions had not prevented him from further violent conduct. It concluded that revocation of defendant's probation was necessary to protect the community from further criminal activity by defendant. This appeal followed.

Defendant's first argument on appeal is that the State failed to prove he violated condition A, the condition prohibiting criminal behavior, because it offered no evidence that Devin Brown was the sixteen-year-old nephew he was alleged to have assaulted in the probation-violation complaint. The State bears the burden of proving a probation violation by a preponderance of the evidence. State v. Bostwick, 2014 VT 97, ¶ 8, 197 Vt. 345. "On review, we uphold the court's findings if supported by credible evidence." State v. Sanville, 2011 VT 34, ¶ 7, 189 Vt. 626 (mem.). "We will uphold the court's legal conclusion if it was reasonably supported by the findings and does not constitute an erroneous interpretation of the law." Id.

The complaint alleged that defendant had been arrested and charged with first-degree aggravated domestic assault based on allegations that "on 7/9/2023, [defendant], while intoxicated, assaulted his 16-year-old nephew by striking and choking him (see attached affidavit)." The affidavit referred to the victim as "DB" and stated that DB had told responding officers that his uncle, defendant, had assaulted him. Based on the evidence presented at the hearing, the court found that on July 9, 2023, defendant hit Devin Brown without provocation and choked him. The eyewitness who observed the fight testified that Devin Brown was the person assaulted by defendant. The court found that Devin Brown was the "DB" identified in the affidavit. Defendant does not challenge these findings, which are supported by the evidence. While defendant argues that the State failed to present evidence at the merits hearing that Devin Brown was sixteen or that defendant was his uncle, neither the victim's age nor the family relationship was an essential element of the violation charge, which was that defendant had engaged in criminal and violent or threatening behavior.

Defendant appears to claim that the State's failure to present evidence to support every element of the first-degree aggravated assault charge meant that it did not establish "criminal behavior." However, "[t]he requirement that defendant 'not engage in criminal behavior' . . . does not merely prohibit defendant from being convicted of a crime." State v. Richards, 2021 VT 40, ¶ 32, 215 Vt. 1. Rather, it "prohibits unlawful behavior," id. ¶ 28, which includes assaulting another person. Defendant concedes in his brief that assault is "criminal behavior."

To the extent defendant argues that he was not provided with fair notice of the charge against him, his argument is unpersuasive. In the context of a criminal information, "we have held that the key inquiry is whether it is fair to require the defendant to defend on the basis of the charge as stated in the particular information." State v. Neisner, 2010 VT 112, ¶ 29, 189 Vt. 160. The complaint identified the victim by his age, relationship, and initials. The State presented evidence consistent with the charge. Defendant did not claim below to be surprised that the "DB" identified in the affidavit was Devin Brown, and he has not demonstrated how the alleged disconnect between the complaint and the State's evidence prejudiced him. We therefore see no basis to disturb the court's determination that defendant violated condition A.

Defendant further argues that the court abused its discretion in revoking probation because it failed to consider his good behavior while on supervision, alternative conditions, and the sanctions guidelines promulgated by the Vermont Department of Corrections (DOC).

If the court finds that the defendant has violated a probation condition, it has discretion to revoke probation and impose the underlying sentence. 28 V.S.A. § 304(a). To revoke probation, the court must find, based on the original offense and the defendant's intervening conduct, that

3

"(1) confinement is necessary to protect the community from further criminal activity by the probationer; (2) the probationer is in need of correctional treatment which can most effectively be provided if he or she is confined; or (3) it would unduly depreciate the seriousness of the violation if probation were not revoked." Id. § 303(b).

Defendant first argues that the court was required to consider his "intervening conduct," meaning the entirety of his conduct since the original offense, in deciding whether to revoke probation, and that it failed to do so. Id. Specifically, he argues that the court did not consider evidence that he obeyed the law while on probation and was working and supporting his family and engaged in treatment and community service. The record belies defendant's claim that the court did not consider this information. During the second sentencing hearing, the court explicitly found that defendant was engaged in counseling and had been compliant with his probation conditions until the July 2023 assault. It is clear that the court found this evidence to be outweighed by the assault itself, which was unprovoked, violent, and targeted at a family member. Thus, assuming without deciding that defendant's interpretation of the term "intervening conduct" is correct, the court did consider the positive conduct cited by defendant in deciding the sentence.

Defendant next argues that the court improperly concluded that there were no other conditions that could assist him to live a law-abiding life. He argues that his existing conditions requiring breath-alcohol testing, counseling or treatment, a curfew, and electronic monitoring were all at the discretion of his probation officer, and there was no evidence that the probation officer had required him to comply with these conditions. Accordingly, he argues, it was improper for the court to conclude that these conditions, alone or with more stringent conditions, were insufficient to protect the public or ensure that he obeyed the law.

Again, defendant's argument is not quite accurate, because it is clear from the record that defendant was engaged in counseling and group alcohol treatment at the behest of his probation officer prior to the July 2023 assault. Defendant did not argue below that the probation officer's non-implementation of the other conditions supported his continued release. Moreover, the court could reasonably infer from the evidence that more conditions would not deter defendant's violent behavior. It was undisputed that defendant was doing well on probation, including seeking alcohol treatment, until his unprovoked attack on his nephew. As the court observed, the July 2023 assault resembled the underlying offense to which defendant pled no contest. The allegations supporting that charge were that defendant, under the influence of alcohol, recklessly drove his truck around a mobile home park and then started threatening to cut off the heads of his neighbors and the police with a machete. Under these circumstances, we see no abuse of discretion in the court's conclusion that defendant's existing conditions were not sufficient to protect the community against further violence.

Finally, defendant argues that the court failed to consider sanctions guidelines established by the DOC, as required by statute. See id. § 304(c) (stating that prior to revoking probation, court is required to "consider, but has complete discretion whether to follow, sanction guidelines established by the Department of Corrections"). The parties did not bring up the sanctions guidelines below, and the court did not appear to consider them. However, it is not clear that they would have been applicable here. The guidelines establish graduated sanctions for "technical violations" of probation, meaning violations that do not constitute new crimes. Graduated Sanctions for Violations of Probation, Code of Vt. Rules 13 130 028,

4

http://www.lexisnexis.com/hottopics/codeofvtrules. Defendant does not argue that the July 2023 assault was a "technical violation" for which graduated sanctions were available. He therefore fails to demonstrate how the alleged error would have made a difference to the outcome. See State v. Gauthier, 2016 VT 37, ¶ 10, 201 Vt. 543 (concluding no plain error where defendant failed to show prejudice arising from alleged error).

Affirmed.

BY THE COURT:

_____
Harold E. Eaton, Jr., Associate Justice

_____
William D. Cohen, Associate Justice

_____
Nancy J. Waples, Associate Justice